MARVIN R. BISHOP, APPELLEE, v. CITY OF OMAHA, APPEL-LANT.

FILED JANUARY 10, 1936. No. 29666.

*Seymour L. Smith, A. C. R. Swenson, Harold C. Linahan* and *William W. Wenstrand,* for appellant.

*Rosewater, Mecham, Shackelford & Stoehr* and *Reginald C. Miller, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and MUNDAY, District Judge.

PAINE, J.

This is a suit at law by members of the fire department to recover from the city of Omaha a large sum claimed to be due on back salaries. A jury was waived, and the district court rendered judgment, each party appealing from that part of the judgment which was adverse to its claim.

Marvin R. Bishop, the plaintiff, appellee and cross-appellant, was the assignee of the claims of some 250 other members of the fire department of the city of Omaha, and will hereafter be referred to as the firemen. The city of Omaha is the defendant, appellant and cross-appellee, and will hereafter be styled the city.

On May 10, 1934, a transcript on appeal from the city council was filed in the office of the clerk of the district court, together with a petition setting out two causes of action against the city, and seeking to recover $55,472.33. The first cause of action related to the salaries of the firemen for the year 1932, and the second to their salaries for the year 1933.

It appears that all of the firemen were members of the city fire department during the years 1932 and 1933; that all of them held claims for unpaid salary as officers and men of the fire department, as set out in exhibit A, attached to the petition and consisting of five pages, giving the alphabetical list of names of said firemen, the respective positions that each filled in the fire department, such as assistant chief, battalion chief, senior and junior captains, chauffeurs, pipe men, truck men and mechanics, which exhibit shows the deductions from their salaries for certain months during the years 1932 and 1933, also showing in another column their regular salaries, running from $321.66 a month for assistant chief, $280 a month for a battalion chief, $205 for senior captain, $192.50 for junior captain, and the other salaries down to $150 a month. In each of the causes of action it is charged that the city failed to pay the firemen at the rate of salary provided by the ordinance.

Section 14-504, Comp. St. 1929, provides that the department of accounts and finance shall open an account with

each fund, and place therein a credit of 90 per cent. of the tax levy apportioned to it, and credit thereto all funds coming in, and section 14-506 provides that no warrant can be drawn against said fund in excess of the amount credited thereto; so that when the 90 per cent. has been exhausted no further warrants can be drawn unless actual receipts of money in excess thereof have come into the fund.

In accordance therewith, the comptroller credited the fund in 1932 with $535,953.53, and in the first five months of the year warrants were drawn to the amount of $280,-658.50. Thereupon, to avoid a threatened deficit, the city council adopted resolutions in June and also on July 12, 1932, which resolutions suspended each of the firemen without pay for three days each month from June to December, 1932, inclusive, and the members of the fire department signed a resolution in which they agreed to serve without pay in their regular capacity during each three-day period of suspension, retaining during such three-day suspension their retirement, pension and compensation rights. It is shown by the evidence that several very serious fires occurred during these periods of three-day suspensions, and that all of the firemen served valiantly, although receiving no pay. These resolutions constituted legal suspensions, duly acquiesced in by the firemen. *State v. Moores,* 63 Neb. 301, 88 N. W. 490. The firemen took no appeal from such action of the council, and its action was and is final. However, the city in addition deducted from the first pay check, issued in September, 1932, an additional 10 per cent. of seven days' salary. The trial court found that such 10 per cent. additional deduction from each fireman was wholly unwarranted, and rendered judgment on the first cause of action against the city for this sum of $1,045.65, with interest.

The second cause of action set out in the petition relates to the firemen's salaries for the year 1933. It is alleged that the power of the city council to change, fix, or revise salaries is fixed by section 14-708, Comp. St. 1929, as amended by a vote of the electors of said city, and forms a

part of the home rule charter; that, in accordance therewith, ordinance No. 14100 was passed, fixing the salaries of said firemen, which ordinance was effective from September 1, 1932, to January 1, 1934. That during the months of July to December, 1933, the city failed to pay the salaries so fixed in said ordinance, but illegally deducted $30 each month from the salary of each fireman, and, in addition, illegally deducted $1 a day for the last eight days in December, 1933, all as set out in detail in exhibits attached, the total deductions amounting to the sum of $40,-661.69.

The defendant, for answer to the second cause of action, alleges that on or about July 1, 1933, it became apparent that the revenues available for the payment of firemen's salaries would be insufficient to pay salaries at the amounts fixed by ordinance, and that, in order to prevent the passage of an ordinance reducing salaries, the firemen each voluntarily signed and executed in writing the following agreement, many copies thereof being made:

"Omaha, Nebraska, July 21, 1933.

"We, the undersigned, officers and men of the fire department of the city of Omaha, knowing and realizing that there is not available for the payment of the present fiscal year adequate funds to maintain the fire department at the present strength with all men working full time, and that certain concessions will have to be made: That is, a reduction in salary in an amount equal to $30 per man until December 31, 1933.

"We, the undersigned, in order that the fire department may function adequately and efficiently until the end of the year, 1933, within the funds available, hereby agree to take from time to time temporary lay-offs individually and severally without pay, and to make such other concessions as may be necessary to keep the cost, for salaries of said department, within the maximum available for said purposes for the remainder of the year 1933. Each of us signing this agreement signs it willingly and voluntarily, without coercion or compulsion."

That pursuant thereto, the city caused to be deducted said $30 a month from each warrant.

For reply thereto, the firemen allege that such request was not voluntarily signed, but was obtained under duress, without consideration, by means of threats and intimidations on the part of the city and its agents; that the same was contrary to public policy and void, and was part of a scheme to obtain the labor of said firemen without pay; that the signatures of the firemen were obtained by statements and representations that the funds lawfully appropriated had been depleted so there remained insufficient funds to pay said salaries; that said representations were untrue in material portions thereof, but were believed by the firemen and fully relied upon by them, and so misled them. The firemen further reply that there were at all times in 1933 sufficient funds to pay the full salaries fixed by ordinance, and this allegation was sustained by the evidence.

In the bill of exceptions is found a purported ordinance, being identified as exhibit 12, document No. 1633, which was identified by the city clerk as having been presented to the city council on July 11, 1933. It purports to be an ordinance fixing salaries of all officers and employees in the fire department at certain sum per annum, all sums being left in blank, and section 2 thereof provides that ordinance No. 14100 be repealed. It was to take effect August 8, 1933, and bears simply the signature of Roy N. Towl, as the commissioner who introduced it, and the words, "Approved, Seymour L. Smith," but no signature of the mayor or clerk. It is disclosed that the record taken thereon was by motion of Mr. Hopkins: "That the action on the ordinance be postponed and that the council approve the plan of the fire department of making up deficit in department, with the understanding that agreement with one hundred per cent. of the members be brought in Tuesday, July 25, 1933. Dan B. Butler, Chairman, Committee of the whole;" which report was adopted.

It is therefore shown by the evidence that in 1932 the

city council actually passed a resolution legally suspending the firemen for definite days in definite months, but in 1933 no such resolution was passed, but when this exhibit 12, an ordinance drawn up in skeleton form, was introduced into the council, the firemen were greatly aroused because of the threats of the passage of such an ordinance legally reducing their salaries, and when mimeographed copies of an agreement were presented to them they were signed by all the firemen in the various companies employed in the department. It appears that after the firemen had signed such agreement to make a reduction of $30 a month per man, it being by error stated in the agreement that it was only $30 per man, the proposed ordinance was pigeonholed in committee of the whole, and never actually passed by the council, and that the city officials not only deducted the suggested $30 a month per man, but also other and additional sums from their legal salaries. The firemen insist that this agreement was drawn and prepared by the city legal department. Many firemen testified that they were forced to sign it, and some claim that they could not get their pay warrants until after they signed the agreement, and evidence is in the record to the effect that perhaps a dozen of the firemen never signed the agreement at all.

Firemen who are regular members of the fire department of the city of Omaha are public officers. *Gillespie v. City of Lincoln*, 35 Neb. 34, 52 N. W. 811.

When a public officer has been duly appointed, and has qualified and entered upon the duties of his office, he is entitled to draw the salary prescribed by statute, and to draw no compensation in excess of that fixed by law. *Frasier v. Dundy County*, 115 Neb. 372, 213 N. W. 371; *United States v. Andrews*, 240 U. S. 90; *Bayha v. Webster County*, 18 Neb. 131, 24 N. W. 457.

There is no question but what the city council of Omaha had the power to suspend any member of the fire department for economic reasons, and that it was clearly within the right of the city, when the council had good reason to believe the funds of the department would be exhausted in

1932, to suspend each fireman for three days each month, but it does not follow that the city officers could, in addition to the suspension provided in a resolution, arbitrarily deduct additional sums from such salary, and the trial court was right in holding that the firemen were entitled to recover judgment for such additional sums so deducted.

The procedure in the year 1933 was entirely different. The city council were not actually facing any threatened shortage of funds, but still seemed to desire to cut the legally fixed salaries. The threat of reduction of salaries by the ordinance introduced led the members of the fire department to sign up waivers of a portion of their salary. Did the signing of these waivers estop the firemen from recovery in this action?

On this second cause of action, covering the year 1933, it may be admitted that, in the able brief filed by the counsel for the city, cases are presented from other jurisdictions which sustain to a certain extent their contentions, such as *Hobbs v. City of Yonkers,* 102 N. Y. 13, 5 N. E. 778, and *De Boest v. Gambell,* 35 Or. 368, 58 Pac. 72, but in a later case the supreme court of Oregon, in *Brauer v. City of Portland,* 35 Or. 471, 58 Pac. 861, distinguished the holding in the *De Boest* case, which holding, if adhered to by the Oregon court, would place that state with the minority view.

In the first case of *Hobbs v. City of Yonkers, supra,* there was an agreement by the city treasurer to turn over all fees he received above $2,000 a year to the city, and the council allowed him to remain in office for three years upon this agreement without legally fixing his salary at any sum whatever, and he then sued for the excess fees turned in, and it was held that under these facts he could not recover them.

In *Grant v. City of Rochester,* 79 App. Div. (N. Y.) 460, 80 N. Y. Supp. 522, the commissioner of public works of the city of Rochester agreed to work for $300 a month during the years 1900 and 1901. He received and cashed a treasurer's check each month for $300, which stated that it was for the full salary for that month. During these

two years the board of estimate and apportionment had designated the salary of the commissioner of public works at $4,000 per annum. After he had served two years and drawn $300 a month, the commissioner of public works sued the city for the balance of his salary. It was held that his salary as fixed by the board of estimate and apportionment is an incident to his office, and, in the event of the common council unlawfully assuming to reduce the amount of such salary, an agreement entered into between the commissioner and the mayor, who had the power to remove him at pleasure, by which agreement the commissioner agreed to accept the salary fixed by the common council at $300, will not affect the commissioner's right to recover from the city the difference between the salary as fixed by the board of estimate and apportionment and that fixed by the common council, as his right to salary is not by contract or agreement, but is an incident to his office. In this opinion the court reviews many New York cases and shows that they are in line with the holding of the court, and then lastly they discuss the case of *Hobbs v. City of Yonkers, supra,* and say that it is clearly distinguishable from the others, for there the city treasurer turned over to the city the fees received in excess of the agreed compensation, and that for a portion of the time it was presumed the common council omitted to fix the plaintiff's salary, in reliance upon the agreement.

In the case of *City of Louisville v. Gorley,* 80 S. W. (Ky.) 203, the act of suspending the members of the detective and police force of the city for four days in each month because of lack of funds was held to be void, and that it did not prevent their recovering the pay for such time.

A case closely in point with the case at bar is the case of *City of Louisville v. Thomas,* 257 Ky. 540, 78 S. W. (2d) 767, in which a suit was brought by the clerk of the police court for $412.83, being the amount of a reduction in his salary. It is stated that the city made this reduction when there was grave doubt whether the finances would meet the expenses, and that the clerk of the police court consented to

the reduction and signed an agreement to that effect, together with all other city employees, and that the city relied on the agreement, and that the clerk of the police court should be estopped from asserting his claim for a greater sum than was paid and accepted by him. However, it was held by the court that such an agreement is void.

In the case of *Peterson v. City of Parsons,* 139 Kan. 701, 33 Pac. (2d) 715, any agreement by an appointive city officer of a city of the first class, where the salary for such officer is fixed by ordinance, pursuant to a statute requiring it to be so fixed before his appointment, and such city officer consented to a reduction in salary, it was held that the agreement was void and unenforceable and against public policy. To the same effect is *Rhodes v. City of Tacoma,* 97 Wash. 341, 166 Pac. 647, and *Geddis v. Westside Nat. Bank,* 7 N. J. Misc. 245, 145 Atl. 731.

At least three cases have already been decided by this court involving similar facts. The first is the case of *Gallaher v. City of Lincoln,* 63 Neb. 339, 88 N. W. 505. As this case is discussed by both parties, both in their oral argument and in their briefs, it is perhaps the leading case in Nebraska on the point in question. It appears that Kate Gallaher was employed as police matron of the city of Lincoln, and served in that capacity for 17 months, with an agreement at the time she was employed that she would serve the city for the sum of $25 a month, which amount was paid her each month for the first 16 months of her service. The law then in force provided that she should be paid a salary of $50 a month, and she filed a claim against the city for the balance due and unpaid at the rate fixed by the statute. The case was tried to the district judge without a jury, and the court found for the city of Lincoln. Upon appeal to this court, Commissioner Oldham wrote the opinion, starting with the question, "Can a public officer, whose salary is fixed by law, estop himself, as between himself and the government, from claiming full compensation by accepting an amount less than that prescribed by statute for such services?" He then discusses a number of cases

from various states, and arrives at the answer that such public officer cannot estop himself from claiming the full amount due under the statute. He holds that it is against public policy for an appointive city officer to agree to perform the duties of his office for a sum less than the amount prescribed by law, and that such an agreement on his part is absolutely void.

In the case of *Abbott v. Hayes County*, 78 Neb. 729, 111 N. W. 780, this court had before it the case of M. J. Abbott, a candidate for the office of county attorney of Hayes county, who in his campaign during the fall of 1889 stated that if he was elected he would not demand or accept compensation of more than $300 a year, although at that time the statute fixed the salary of the county attorney in Hayes county at $500 a year. Mr. Abbott was elected and served two years, being paid his quarterly salary claims in the amount of $75 each. After the expiration of his term, suit was brought by one to whom he had assigned a claim for $400, being the balance of $200 a year of the salary as provided by statute. The county board rejected the claim, and Judge Grimes, of North Platte, holding court for Judge Orr, entered judgment for the amount claimed, and the case was appealed to this court. Commissioner Ames held that the case was ruled by the case of *Gallaher v. City of Lincoln, supra*. The county argued that each quarter, when he filed his claim for $75, he thereby donated to the county the undemanded residue of his salary for that quarter, and this argument was rejected, and it was held: "An agreement, express or implied, by a public officer to serve for less than the compensation fixed by law is contrary to public policy and void."

A third case of this nature is found in the Nebraska reports in the case of *Scott v. Scotts Bluff County*, 106 Neb. 355, 183 N. W. 573, in which it was held that a deputy sheriff, appointed by the sheriff to act as jailer, is a public officer, and a contract by which he agrees to perform the duties of jailer for a different compensation than that fixed by law is against public policy and void, and basing the

decision upon the case of *Dunkel v. Hall County*, 89 Neb. 585, 131 N. W. 973, it was held that the plaintiff was entitled to recover.

These Nebraska cases are set out in the annotation in 70 A. L. R. 972, upon the subject, "Validity of agreement by public officer to accept less than compensation or fees fixed by law," and it is therein set out that the majority view in the courts of the United States is well settled that an agreement by a public officer to perform services required of him for a less compensation than that fixed by law is contrary to public policy and void. Such jurisdictions hold that such officer may recover the legal salary or fees for the service rendered.

A careful examination of the record in this case, consisting of four volumes, and of the very excellent briefs, brings us to the conclusion that the judgment of the trial court is in accordance with our former holdings, which are supported by the great weight of authority from other jurisdictions, and, therefore, we conclude that the judgment of the lower court was right, and it is hereby

AFFIRMED.