[No. 26561.   *En Banc.*   May 3, 1937.]

THE STATE OF WASHINGTON, *on the Relation of James Ausburn et al., Respondents,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

[1] Reported in 67 P. (2d) 913.

A. C. *Van Soelen* and *Glen E. Wilson,* for appellants.
*Stuntz & Burns* and *Hazel & Hazel,* for respondents.
*Colvin & Rhodes, amicus curiae.*

MILLARD, J.—James Ausburn, and other firemen of the city of Seattle, sought by mandamus proceedings to require the city of Seattle to pay to them certain amounts of their respective salaries which they alleged were unlawfully withheld from them. From judgment entered in favor of the relators, the city and its comptroller appealed.

In 1924, an initiative measure was passed by the voters of Seattle increasing the salary of the firemen of the class of the respondents in the sum of twenty-five dollars monthly. The effect of that ordinance was to fix the salary of the respondents, and others of that grade, at the rate of one hundred and eighty dollars monthly. The initiative ordinance is still in force.

In 1933, the reduced revenues of the city necessitated the strictest economy in all departments of the city government. It was thought that a radical reduction of the fire department force, in order to make the necessary proportionate saving, would increase the hazard to public safety and property from fire and would also be unfair to those members of the department who would be deprived of their positions entirely. To meet the emergency presented, the chief of the fire department (deeming § 12, Art. XVI, of the

city charter authorized him to do so), suspended without pay the respondents and all other members (not now complaining) of the same class of the fire department for two periods of not more than twenty-five days at a time. The men concerned made no protest to the civil service commission or otherwise indicated any objection to the method employed by the city to meet the situation.

Article XVI, § 12, of the city charter, which contains a provision that the article shall not limit the power of any officer to suspend without pay a subordinate for a period not in excess of thirty days, reads as follows:

"Every officer or employe in the classified civil service shall hold office until removed or retired. Any officer or employe in such service may be removed by the appointing power only upon the filing with the commission of a statement in writing of the reasons thereof. Any officer or employe so removed may within ten days after his removal demand an investigation. The commission shall forthwith make such investigation and its finding and decision shall be certified to the appointing officer, and if the removal is not sustained thereby, the officer or employe so removed shall at once be reinstated. *Nothing in this article shall limit the power of any officer to suspend without pay a subordinate for a period not exceeding thirty days.* In the course of any investigation each member of the commission shall have power to administer oaths, and the commission shall have the power to require the attendance of any officer or employe or other person and the production of books and papers relevant to such investigation. The provisions of this section shall not apply to the removal of the chief of police." (Italics ours.)

In 1934, 1935, and 1936, the city of Seattle was confronted with an economic emergency like that met by the city in 1933. The legislative authority of the city

joined the administrative authority in the solution of the problem. An ordinance, which granted to the firemen one day off in eight *with pay,* was suspended by an ordinance enacted by the city council for each of the three years 1934 to 1936, inclusive. The suspension ordinance for the years 1934, 1935, and 1936 required the members of the fire department to take one day off in eight *without pay* and directed the chief of the fire department to take the necessary steps to effectuate that policy. Pursuant thereto, the chief of the fire department promulgated a general order suspending each member of the department one day in each eight without pay.

The order of the chief of the fire department in 1934, which order is substantially the same as the orders issued subsequent thereto, provides (in accordance with the city ordinance under which the firemen are required to take one day off duty in eight without pay) that:

" . . . one day off duty without pay every eight days, instead of one day off in every eight with pay, will be effective for the members of the 'D' service of the department.

"The monthly rate of pay will be in accordance with Initiative Ordinance No. 47660 or so called $180 scale for firemen.

"Members will retain present off numbers assigned them in their respective positions. Regular members of the 'D' service not assigned off numbers at present because of detail assignments, etc., are hereby assigned off No. 1 for pay roll purposes.

"Reliefmen working in positions of regular members will take the offs of members they are relieving and in all cases, of course, will not draw pay for such days.

"Without special orders from Chiefs office regular members and reliefmen will not be permitted to work or draw pay during regular offs assigned positions. This for the reason that no funds are available for salaries during offs."

In the salary ordinances, the working time of the officers, the respondents, and all members of their class in the fire department, was accordingly modified to ten and one-half months during each of the years in question, a total of one and one-half months each year "being time off" without pay. At all times involved, the basic salary rates of one hundred and eighty dollars monthly for members of respondents' class in the fire department were maintained as fixed by the initiative ordinance. As a result of this plan, there was no reduction of the fire department force—no one was deprived of his position. None of those affected by it protested against, or objected to, the plan until this action was instituted in 1936.

Substantially, the argument of counsel for respondents is as follows. The city council is powerless to alter, amend or repeal the initiative measure which fixed the salary of the respondents. The appointing officer may suspend, *only for disciplinary purposes*, any employe without pay for a period not exceeding thirty days, in view of Art. IX, § 5, of the civil service rules adopted pursuant to Art. XVI, § 4, of the city charter. The city council was without power to adopt the method which fixed the term of office of respondents at ten and one-half months a year. The council's attempt to reduce the force by the method adopted constituted a violation of civil service Rule X, §§ 5, 6, and 7, governing the order of "lay-off because of reduction of force."

Section 4, Art. XVI, of the city charter, reads as follows:

"The commission shall make rules to carry out the purposes of this article, and for examinations, appointments, promotions and removals in accordance with its provisions, and the commission may, from time to time, make changes in the existing rules."

Article IV, § 18, subd. 40, of the charter of the city of Seattle, provides:

"The city council shall have power by ordinance and not otherwise—

"To ordain, establish, modify and abrogate from time to time, as the needs of the city shall require, all proper offices and bureaus, subordinate and auxiliary to the departments and heads thereof constituted by this charter, and to provide for the conduct and government of such offices and bureaus, and the appointment, removal, duties and compensation of officers to fill the same, except as in this charter otherwise provided."

Article XI, § 1, of the charter provides:

"There shall be a fire department, which shall consist of a chief of the fire department, and as many subordinate officers and firemen as the city council shall from time to time by ordinance prescribe."

Rule IX, § 5, of the civil service rules, invoked by counsel for respondents, provides:

"For disciplinary purposes, the appointing officer shall have exclusive authority to suspend any employe without pay for a period not exceeding thirty days."

Rule X, §§ 5, 6 and 7, of the civil service rules, reads as follows:

"Sec. 5. Lay-off because of reduction of force shall be in the following order: (1) Those who have no civil service standing; (2) probationary appointees not entitled to veteran preference; (3) probationary appointees entitled to veteran preference; (4) regular civil service employes not entitled to veteran preference; (5) regular civil service employes entitled to veteran preference.

"As between employes in groups (4) and (5) the following shall control the order of lay-off: To the average efficiency rating for the last two rating periods all one-half per cent for each of the first ten years of regular service in the position in question,

and one-eighth per cent for each full year of service thereafter. The person serving in the designated position having the lowest average thus obtained shall be the first of the regular employees to be laid off; except that, between employes in Class 'K,' Transportation Service, lay-off shall be in inverse order of length of continuous service. In lay-off of Laborers from service outside the city each location may be considered separately.

"Sec. 6. There shall be a reinstatement register which shall contain only the names of regular employes who, having passed the period of probation, shall have been laid off or reduced in grade by reason of lack of work or lack of funds. All persons whose names are listed upon such register shall, within two years from the date of lay-off, be entitled to reinstatement in the manner provided in Section 7 of this rule to the same position and departments, or to certification from the eligible list for original appointment to like positions in other departments; provided that if so appointed their right to reinstatement in their former position shall cease at the expiration of the period of probation.

"Sec. 7. The person last laid off shall first be reinstated. If several were laid off at the same time, the one having the highest rating, as provided in Section 5 of this rule, shall first be reinstated, except in reinstatement of persons in Class 'K,' Transportation Service, in which case length of continuous service shall control."

Unquestionably, the people of Seattle, under their city charter, have the power to adopt initiative measures which the city council cannot amend or modify, as such measures can be altered, amended or repealed by no less authority than that which called such measures into being.

Where a city charter vests no power in the city council therefor, the city council cannot amend or change the amount of a salary fixed by a referendum vote of the people. *State ex rel. Pike v. Bellingham,*

183 Wash. 439, 48 P. (2d) 602. In the case cited, we held that, whether an officer waives or donates a part of his salary, it is against public policy and void, where it relieves the city of the burden of payment of the full salary. In that case, the respondents, who were members of the police and fire departments, signed written waivers or donation agreements of a part of their salaries for the year in question. There, the men, who were required to donate a portion of their salaries, continued to work; they were not suspended or laid off without pay.

In *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, we held that a referendum ordinance, which fixed the salary of certain officers, could not be amended or the salary reduced by ordinance of the city council in its representative capacity, and that a waiver by a fireman, who is a public officer, of a part of his salary, or an agreement on his part to accept less than the salary fixed by law, is against public policy and void. To the same effect are *Bell v. Mabton,* 165 Wash. 396, 5 P. (2d) 514, and *Rhodes v. Tacoma,* 97 Wash. 341, 166 Pac. 647. In the foregoing cited cases, the men donated a portion of their salaries, but continued to work; while, in the case at bar, the services were not rendered to the city during the time the men were suspended.

Section 12, Art. XVI of the charter, quoted above, provides that the officers and employes shall hold office until removed or retired, and then provides that nothing in Art. XVI shall limit the power "of any officer to suspend without pay a subordinate for a period not exceeding thirty days. . . ." The language "Nothing in this article" shall limit the power of suspension for periods of less than thirty days is very pertinent. The rulemaking power of the civil service commission is also contained in Art. XVI,

quoted above (§ 4, Art. XVI). That portion of § 12, Art. XVI, that

"Nothing in this article shall limit the power of any officer to suspend without pay a subordinate for a period not exceeding thirty days,"

is paramount to, and is not limited by, § 5, Rule IX, of the civil service rules, providing that the appointing officer shall have, for disciplinary purposes, exclusive authority to suspend any employe without pay for a period not exceeding thirty days. There was no intention to evade the civil service rules when, because of economic emergency, the chief of the fire department exercised the power of suspension without pay granted to him by § 12, Art. XVI of the city charter. The power of suspension was exercised as an alternative to a reduction of the force when the city was confronted by a lack of funds with which to pay the firemen.

The city of Chicago is governed by a statutory provision almost identical with the provision in § 12, Art. XVI, of Seattle's city charter. When the financial problem, similar to that which confronted the city of Seattle, was faced by the city of Chicago, in order that the efficiency of the city department of health might be preserved, the entire force of sanitary inspectors was suspended, in rotation, for periods of twenty-five days. Thomas, one of the employes, instituted an action for salary during the period of suspension, on the ground that, under civil service rule VIII, § 7, the department head should have reduced the force, which would have resulted in the retention of Thomas because of his seniority.

"Whenever it becomes necessary in any bureau, through lack of work or funds or for other cause, to reduce the force in any employment, the person working in such bureau who was last certified for such employment shall be the first laid off. Seniority of

certification shall control in lay-off cases of employees transferred from one bureau to another or re-instated in the service. This section shall not apply to positions in the common labor service, (class L) in which employees may be laid off without regard to seniority." *Thomas v. Chicago*, 273 Ill. 479, 113 N. E. 140.

Hurd's Rev. Stat., 1915, of the state of Illinois, chapter 24, § 457, subd. 12, provides that no employe in the classified civil service of any city shall be removed or discharged, except for cause, upon written charges, after an opportunity to be heard in his own defense. That section further provides:

"Nothing in this act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days."

The Illinois statute and § 12, Art. XVI, of the Seattle city charter are the same in principle. The only difference is that there is not present in the Illinois statute the phrase "without pay."

In the *Chicago* case, the trial court found in favor of the plaintiff. The appellate court for the first district reversed the judgment of the trial court, finding, substantially, that the action of the city in laying off the plaintiff for a period of twenty-nine days was taken in good faith and in the interest of economy and necessary retrenchment, and not for the purpose, or with the intent, to circumvent or evade any provision of the act to regulate the civil service of cities or any civil service rules adopted pursuant to the provisions of the act. In affirming the judgment of the appellate court (194 Ill. App. 526), the supreme court of Illinois said:

"The precise question to be determined is whether, under section 12 of the act, the head of the department of health had the right to suspend the plaintiff, under the circumstances, for the period of twenty-nine days, or whether any suspension or lay-off was

absolutely controlled by section 7 of rule 8 adopted by the civil service commission as above set out.

"The language of section 12 is explicit and unambiguous. It provides squarely that 'nothing in this act shall limit the power of any officer to suspend a subordinate for a reasonable period, not exceeding thirty days.' It is contended by counsel for the appellant that this provision only refers to suspensions for cause, as enumerated in that section, and was clearly inserted for the purpose of enabling the head of a department to maintain necessary discipline and efficient service by temporarily suspending an employee pending an investigation of charges preferred against him or while his case was being considered. While, undoubtedly, the head of the department would necessarily have the power to suspend a subordinate for these causes if the head of a department were to have any control over such subordinate or anything to say about the management of his department, there are a great many causes, other than those given by counsel for appellant, which might make a suspension or lay-off of the employees of a department necessary. Can it reasonably be said, under the clear and explicit language of the statute, that the head of the department has not the power to lay off employees under him for periods of less than thirty days for lack of work, lack of funds, or other good cause? The Appellate Court has made a finding of fact that the action of the head of the department was taken in good faith and in the interest of economy and necessary retrenchment and with no intent to circumvent or evade any provision of the Civil Service law, and this finding of fact is conclusive on this court. A different question would be presented if it appeared that the plaintiff had been suspended or laid off for the purpose of evading the provisions of the Civil Service law. In *Fitzsimmons v. O'Neill,* 214 Ill. 494, we held that section 12 of the Civil Service Act, providing that no employee in the classified service shall be removed except for cause, upon written charges, etc., does not apply to removal from office consequent upon the abolishment of the office if it is in good faith and in the interest of economy, and we think the same

principle should be applied in the case at bar. We are obliged to assume from the finding of facts that the head of the department of health was obliged, in the interest of economy and because of lack of funds, to reduce the force of sanitary inspectors under him, and did so in such a manner as in his judgment the best interests of the city required. If he had arbitrarily followed the rule of the civil service commission it may have been that certain parts of the city or some districts would have been left without inspectors, or their places would have been filled by men taken from other districts who were not as familiar with such districts or certain lines of business, and the work of the department would have been impaired." *Thomas v. Chicago*, 273 Ill. 479, 113 N. E. 140.

In *Bishop v. Omaha*, 130 Neb. 162, 264 N. W. 447, it was held that the legal right to the salary fixed for a public officer is an incident to his office, and cannot be changed by an agreement on his part to take less. It was held, however, in that case, that the plaintiff and other firemen, who brought the action against the city of Omaha to recover claimed back salary, were foreclosed by their failure to take an appeal from the action of the city council on their first cause of action. The first cause of action was to recover for deductions from their salaries during the year 1932. It appears that, in order to avoid a threatened deficit, the city council adopted resolutions which suspended each of the firemen without pay for three days each month from June to December, 1932. The members of the fire department signed a resolution in which they agreed to serve without pay, in their regular capacity, during each three-day period of suspension, retaining, during such suspension, their retirement and pension rights. Several very serious fires occurred during these periods of suspension, and all the firemen served voluntarily, although receiving no pay.

The court said that the resolutions of the city council constituted legal suspensions, duly acquiesced in by the firemen, and that the action of the city council was final, as the firemen took no appeal from the action of the council. From the first pay check issued in September, 1932, the city deducted an additional ten per cent of seven days' salary. The trial court found that the additional deduction was unwarranted, and rendered judgment therefor on the first cause of action. The second cause of action was to recover the amount deducted from the salaries of the plaintiffs during the months of July to December, 1933.

The power of the city council of Omaha to change, fix or revise salaries was fixed by a statute of 1929, as amended by a vote of the electors of that city, and forms a part of the home rule charter. In accordance therewith, an ordinance was passed fixing the salaries of the firemen, which ordinance was effective from September 1, 1932, to January 1, 1934. During the months of July to December, 1933, the city deducted thirty dollars each month from the salary of each fireman fixed in said ordinance, and, in addition, deducted one dollar a day for the last eight days in December, 1933. The city defended on the ground that it became apparent that the revenues available for the payment of firemen's salaries would be insufficient to pay salaries at the amounts fixed by ordinance, and that, in order to prevent the passage of an ordinance reducing salaries, the firemen each voluntarily signed and executed, in writing, an agreement reading as follows:

" 'Omaha, Nebraska, July 21, 1933.

" 'We, the undersigned, officers and men of the fire. department of the city of Omaha, knowing and realizing that there is not available for the payment of the present fiscal year adequate funds to maintain the

fire department at the present strength with all men working full time, and that certain concessions will have to be made: That is, a reduction in salary in an amount equal to $30 per man until December 31, 1933.

" 'We, the undersigned, in order that the fire department may function adequately and efficiently until the end of the year 1933, within the funds available, hereby agree to take from time to time temporary lay-offs individually and severally without pay, and to make such other concessions as may be necessary to keep the cost, for salaries of said department, within the maximum available for said purposes for the remainder of the year 1933. Each of us signing this agreement signs it willingly and voluntarily, without coercion or compulsion'."

For reply thereto, the firemen alleged that the request was not voluntarily signed. The supreme court of Nebraska, in the course of the opinion holding that the city council had the power to suspend any member of the fire department for economic reasons, said:

"There is no question but what the city council of Omaha had the power to suspend any member of the fire department for economic reasons, and that it was clearly within the right of the city, when the council had good reason to believe the funds of the department would be exhausted in 1932, to suspend each fireman for three days each month, but it. does not follow that the city officers could, in addition to the suspension provided in a resolution, arbitrarily deduct additional sums from such salary, and the trial court was right in holding that the firemen were entitled to recover judgment for such additional sums so deducted.

"The procedure in the year 1933 was entirely different. The city council were not actually facing any threatened·shortage of funds, but still seemed to desire to cut the legally fixed salaries. The threat of reduction of salaries by the ordinance introduced led the members of the fire department to sign up waivers of a portion of their salary. Did the signing of these

waivers estop the firemen from recovery in this action? . . .

"These Nebraska cases are set out in the annotation in 70 A. L. R. 972, upon the subject, 'Validity of agreement by public officer to accept less than compensation or fees fixed by law,' and it is therein set out that the majority view in the courts of the United States is well settled that an agreement by a public officer to perform services required of him for a less compensation than that fixed by law is contrary to public policy and void. Such jurisdictions hold that such officer may recover the legal salary or fees for the service rendered."

*Bishop v. Omaha,* 130 Neb. 162, 264 N. W. 447, which was decided in 1936, sustains, as does *Thomas v. Chicago,* 273 Ill. 479, 113 N. E. 140, the position of the appellants in the case at bar.

As an alternative to a reduction of the force, the city council adopted a policy requiring the city firemen to lay off one day in eight without pay. It would be unsound to contend that the city could not have required the firemen to work thirty or thirty-one days a month if it were deemed that the needs of the city so demanded. Unless inhibited by the city charter—and it is not—unquestionably the council— the legislative authority—of the city of Seattle has the power to abolish positions because of lack of funds or to adopt the alternative of part time employment. The number of men to be employed is a legislative question. Whether those men shall be employed full or part time, is a legislative question. The amount of money to be applied in the operation of the fire department is a legislative question. Whether enough money can be allocated to provide a certain number of men on a full time basis of twelve months, or whether there is money only sufficient for employment of the men on a ten and one-half months' basis, is a legislative question.

■ Prior to the enactment of the initiative ordinance which fixed the rate of pay of the firemen, the city enacted an ordinance under which the members of the fire department were granted one day off in every eight with pay. This concession of one day off in every eight with pay was not granted in the initiative ordinance, but was in effect prior to the effective date of the initiative ordinance. No reference is made to this concession in the initiative ordinance. If it had been the intention of the citizens of Seattle to legislate on this question of working conditions as well as the salary rates, doubtless they would have so expressed themselves in the initiative ordinance. It should not be forgotten that an initiative ordinance is subject, like any other ordinance, to the charter, which is the basic law. The enactments by the city council in 1934, 1935 and 1936, suspending the ordinance granting one day off in eight with pay and requiring the members of the fire department to take one day off in eight without pay, were authorized by § 18, subd. 40, Art. IV of the city charter, quoted above.

■ The civil service commission cannot, by rule, modify or repeal a provision of the city charter or enact rules not authorized by the power creating the commission. *Allard v. Tacoma,* 176 Wash. 441, 29 P. (2d) 698.

The unlimited power of suspension vested in department heads by § 12, Art. XVI of the charter, was not modified by the civil service rule which refers to suspension for disciplinary purposes. The right of suspension is a condition of employment fixed in § 12, Art. XVI of the charter.

"In the absence of restraints imposed by the constitution or by statute, the power of appointment implies the power of removal, where no definite term is attached to the office or employment by law. *People*

*ex rel. Griffin v. Lathrop*, 142 N. Y. 113, 36 N. E. 805; *Easson v. Seattle*, 32 Wash. 405, 73 Pac. 496. Again, where a statute or municipal charter provides that a municipal officer may be removed for cause, the proceedings for removal are judicial in their nature, and, by the weight of authority, subject to review in the courts, by proper proceedings. Under which class do the provisions in question fall? Section 8 of art. 14 of the charter of the city of Seattle, provides as follows:

" 'Unless otherwise provided by law or this charter, each officer, board or department authorized to appoint any deputy, clerk, assistant or employee shall have the right to remove any person so appointed.'

"Section 12 of art. 16 of the same charter provides as follows:

" 'Every officer or employe in the classified civil service shall hold office until removed or retired. Any officer or employe in such service may be removed by the appointing power only upon the filing with the commission of a statement in writing of the reasons therefor. Any officer or employe so removed may within ten days after his removal demand an investigation. The commission shall forthwith make such investigation and its finding and decision shall be certified to the appointing officer, and if the removal is not sustained thereby, the officer or employe so removed shall at once be reinstated. Nothing in this article shall limit the power of any officer to suspend without pay a subordinate for a period not exceeding thirty days. In the course of any investigation, each member of the commission shall have power to administer oaths, and the commission shall have the power to require the attendance of any officer or employe or other person and the production of books and papers relevant to such investigation. The provisions of this section shall not apply to the removal of the chief of police.'

"Had the charter stopped with the requirement that the appointing power should file with the commission a statement in writing showing the reasons for removal, the charter would in all respects be analogous to Bal. Code, § 108, which provides that,

" 'Whenever the governor is satisfied that any officer not liable to impeachment has been guilty of misconduct or malfeasance in office or is incompetent, he shall file with the secretary of state a statement showing his reasons with his order of removal.' and in such cases we are satisfied that the courts are without jurisdiction to inquire into the question of removal, except possibly the legal sufficiency of the reasons assigned. *O'Dowd v. Boston,* 149 Mass. 443, 21 N. E. 949.

"The fact that another provision of the charter permits the officer or employee to demand an investigation at the hands of the civil service commission, and empowers the commission to reinstate him, does not, in our opinion, change the rule. In adopting the civil service system for the purpose of securing, and retaining in its employ, competent servants, we are of opinion that the people of Seattle deemed it wise to impose no restrictions upon the power of removal, except a requirement that the reasons shall be stated in writing, and an investigation allowed by an impartial board of its own creation. In adopting a charter it was competent for the city to adopt the first rule above stated, which admits of a removal at pleasure and without cause, or the second, which only admits of a removal after a hearing and upon cause shown. . . . Whether such provisions are wise or unwise is not for the consideration of this court." *Price v. Seattle,* 39 Wash. 376, 81 Pac. 847.

*Gorley v. Louisville,* 23 Ky. L. 1782, 65 S. W. 844, cited by respondents to sustain their position that the charter power of suspension is qualified, is not apposite. It is distinguishable on the facts from the case at bar. In that case, it was held that the board of public safety of the city of Louisville had no power to suspend any member of the police force until written charges had been preferred against him and the accused had been given an opportunity to be heard. The court said:

"As to the contention that the board of public safety was authorized to issue and enforce the order

complained of, it is sufficient to say that the opinion of this court in *Gorley v. City of Louisville,* 20 Ky. Law Rep., 602, expressly decided that no member of the police force shall be fined, reprimanded, removed, suspended, or dismissed from the police force until written charges have been preferred or made against him or them, nor until such charges have been examined, heard and investigated before said board upon such reasonable notice to the member or members charged, and in such manner of procedure, practice, examination and investigation as the said board of public safety may, by rules and regulations, from time to time prescribe. It will be seen from the petition that no charges were preferred against the plaintiffs, or trial had. It can hardly be contended that, as alleged in the petition, the laying off of the force was not a suspension of the several policemen, for if the board of public safety may legally lay off or suspend policemen for four days in each month in their discretion, they might lay them off for twenty-eight days, and this practically nullify the law and disregard the decision supra; that the board of public safety has no right to fix the number of the police force was expressly decided by this court in *Neumeyer, Auditor v. Krakel,* 23 Ky. Law Rep. 190. In that case it was expressly decided, quoting from the syllabus, that 'under the charter of the legislative authority is vested in the council to regulate the number of police force and fix their salaries. The board of public safety has no right to fix the number of the police force.' "

That case holds no more than that, as, under the charter of the legislature, the authority to regulate the number of the police force and fix their salaries is vested in their council, and not in the board of public safety, the board of public safety has no right to fix the number of the police force. The city of Louisville restricted the right of suspension. The city of Seattle did not restrict the right of suspension.

Attention is directed by the respondents to the platoon rules of the fire department, promulgated by

the mayor, the city council, and the chief of the fire department, which provide, in effect, that a fireman is never relieved from duty as long as he remains on the force. If we follow the argument of respondents, it is that a fireman is never off duty, and he could recover pay even if he were suspended for disciplinary purposes. A platoon rule, like civil service rules, cannot modify or abrogate a charter provision. If it be true, as respondents contend—and we do not find that the evidence sustains that position—that certain firemen, while under suspension, worked at a certain paint store fire, their status would not be changed by such commendable efforts. They were under suspension, and could not have been compelled to work at that fire. Being validly suspended, their voluntary assistance would not entitle them to recovery of salary for that service.

We have examined all of the authorities cited. They are either distinguishable in principle or on the facts from the case at bar, or are not out of harmony with what we have said above.

■ Section 4, Art. XVI, of the city charter provides that the civil service commission shall make rules to carry out the purposes of Art. XVI, and "for examinations, appointments, promotions and removals in accordance with its provisions." It may be argued that, as the subject of "lay-off" is not mentioned in Art. XVI, a lay-off is not a removal, and therefore the civil service commission has no power to make rules in regard to lay-off. If a man is "laid off," he is suspended. It differs from removal from service only in degree. A removal implies permanent separation from the service, while a suspension or lay-off implies a temporary separation from the service.

If it is not entirely within the discretion of the heads of departments to lay off or suspend subordi-

nates for a period not exceeding thirty days, an employe who is laid off or suspended for a period less than thirty days, under conditions as obtain in the case at bar, if such lay-off, suspension or temporary removal is not in conformity to the civil service rules prescribing the order in which employes shall be relieved from duty because of lack of work or insufficient funds, would have the right of appeal to the civil service commission. However, such appeal, to be effective, must be timely. Under § 12, Art. XVI, of the charter, one who is removed is required to demand investigation within ten days after his removal, otherwise any question pertaining thereto is foreclosed.

It was argued in *State ex rel. Abel v. Seattle,* 137 Wash. 142, 242 Pac. 9, that § 12, Art. XVI of the city charter, shows that the appellate jurisdiction of the commission does not extend beyond removal for cause; therefore, lay-offs (in the case at bar, suspension) did not fall within the classification of removals for cause, and there would be no right of appeal. It was also insisted that § 14, Art. XVI of the charter, which provides that the commission shall investigate the enforcement of Art. XVI and of its rules, etc., shows that the jurisdiction of the commission is limited to investigation and inquiry, and gives no appellate jurisdiction over lay-offs to the commission or power to reinstate one laid off or to revise such person's efficiency ratings.

Quite true, as stated in *State ex rel. Abel v. Seattle,* 137 Wash. 142, 242 Pac. 9, § 12, Art. XVI, refers to removals, and § 14, Art. XVI, the only other section under which it could be argued that the civil service commission could have any power to interfere in the matter of lay-offs, is silent upon the question of time within which the investigation provided for therein

shall be made. If, because of the absence of any reference to lay-offs or suspensions in § 12, Art. XVI, in the matter of investigation of the cause of such lay-off or suspension, it would appear that, if that investigation was not limited to the same time as provided in § 12, Art. XVI, it should, at least, be limited, under § 14, Art. XVI, to a reasonable time; and where employes have, as in the case at bar, waited, not only days, but months and years, after each suspension or lay-off, without demanding an investigation of the cause or protesting because of such lay-off or suspension, such employes have waited an unreasonable length of time, and any question pertaining to such lay-off or suspension is foreclosed.

The judgment is reversed, and the cause remanded with directions to dismiss the action.

STEINERT, C. J., MAIN, HOLCOMB, BLAKE, and TOLMAN, JJ., concur.

ROBINSON, J. (concurring)—In the briefs and upon the oral argument, it was urged with great force on behalf of the respondents that the following sentence from Art. XVI, § 12, of the city charter of Seattle does not grant a power to suspend:

"Nothing in this article shall limit the power of any officer to suspend without pay a subordinate for a period not exceeding thirty days."

The respondents contended that the sentence means no more than this: the right of an officer to suspend a subordinate without pay for a period not exceeding thirty days shall not be limited by anything in this article. And it was said that, since no power to suspend was therein granted and none existed other than to suspend for a disciplinary purpose, and the suspensions in question were admittedly not made for that purpose, they were, therefore, illegal.

I must confess that I entirely agree with the respondents' interpretation of the sentence under discussion, but I think that this interpretation is more harmful than helpful to their cause. From an examination of the city charter, it appears that "this article" includes all the charter provisions concerning civil service, a complete code grouped under a designation "Civil Service Department," the whole constituting "Article XVI."

At the time of, and prior to, the adoption of this civil service code, the city officers had not only the power to suspend but also the power to permanently remove their subordinates without cause. The civil service system was adopted primarily to prevent permanent removals without cause. With this background in mind, if we substitute for the words "this article," as they appear in the sentence, the words "this civil service code," the true purpose and intent of the sentence will more readily appear:

"Nothing in (this civil service code) shall limit the power of any officer to suspend without pay a subordinate for a period not exceeding thirty days."

The sentence is plainly a legislative declaration to the following effect:

Nothing in this civil service code shall limit the (existing) power of any officer to suspend subordinates without pay, provided that such suspension shall not be for periods exceeding thirty days.

In other words, the purpose and intent of the sentence was to make it clear that, while Art. XVI of the charter abrogated the power to remove without cause, it did not abrogate the existing power to suspend, but merely limited suspension to periods not exceeding thirty days. The authority to suspend survived, and it exists independently of the disciplinary purpose rule. Nor is it in any way limited by that

rule, for the rule cannot rise higher than its source, which is § 4 of Art. XVI, and, as we have seen, it is provided that *nothing* in that article shall limit the power to suspend.

The chief of the fire department had the legal power to make the one-day suspension complained of, and, as the respondents were paid for the time they actually worked, and at the full "salary rates" prescribed by the initiative ordinance, they state no valid cause of action against the city.

GERAGHTY, J. (dissenting)—After the court, in the case of *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, had held void the attempt to reduce the pay of firemen by the waiver process, the city of Seattle was faced anew with the problem of retrenchment in the fire department. Still having a choice of legal means for accomplishing this purpose, by referendum amendment of the salary ordinance or by reduction of the force, it attempted instead the new expedient giving rise to the present controversy.

By ordinance existing at the time, firemen were granted one day off in every eight without deduction in pay. The city council passed ordinances suspending this provision, required firemen to take one day off in every eight without pay, and directed the fire chief to issue any orders necessary to carry this policy into effect. The chief thereupon made the order quoted in the majority opinion. The effect of this order was to deprive the firemen of salaries for a month and a half in each year, although their days of active duty remained the same as before.

The city seeks to justify this arrangement by calling it a suspension under Art. XVI, § 12 of the city charter. Section 12, quoted in the majority opinion, relates to

the manner in which employees may be separated from the service for cause and contains this sentence:

"Nothing in this article shall limit the power of any officer to suspend without pay a subordinate for a period not exceeding thirty days."

On this sentence, the city's contention is specifically grounded.

It seems clear to me that the suspension authorized can be made for disciplinary purposes only. The word "suspension" is defined by Webster:

"Temporary forced withdrawal from the exercise of office, powers, prerogative, privileges as a member or communicant, etc.; . . ."

It is defined by the Oxford dictionary:

"The action of debarring or state of being debarred, especially for a time, from a function or privilege; temporary deprivation of one's office or position."

This obvious meaning of the term was embodied in rule nine· of the rules of the civil service rules, reading:

"For disciplinary purposes, the appointing officer shall have exclusive authority to suspend any employe without pay for a period not exceeding thirty (30) days."

Here, it is not contended that the firemen were even temporarily separated from the fire department. They were merely required to take time off without pay. They remained members of the force in good standing, subject to its rules and regulations, and obliged to respond to calls for duty when emergency required. They could not leave the city without permission, and the trial court states, in its memorandum opinion, that they did in fact, during the periods of lay-off, respond to fire calls and assist in the extinguishment of fires.

Without criticising the motives of the city officials

who devised this plan, I cannot help thinking it a plain evasion of the provisions of the city charter. To hold that the city government may do what was attempted here, would permit practical abrogation of the civil service provisions of the charter. In speaking of a similar attempt to evade the law, the court of appeals of Kentucky, in *Gorley v. Louisville,* 23 Ky. L. 1782, 65 S. W. 844, said:

"If the board of public safety may legally lay off or suspend policemen for four days in each month in their discretion, they might lay them off for twenty-eight days, and thus practically nullify the law."

Believing that the judgment of the trial court was correct, I dissent from the majority opinion.

BEALS, J. (dissenting)—While agreeing with Judge Geraghty in his dissent, I desire to add that, in my opinion, if the authority to suspend, which exists for disciplinary purposes only, may be extended to accomplish the purpose for which it was used in connection with the facts in the case at bar, not only may the civil service provisions of the charter be set aside, but salary ordinances may be evaded by the heads of departments to whom pertains the right to suspend. The necessary authority to suspend as a disciplinary measure should not be perverted to accomplish any such purpose. I am not in accord with the opinion of the majority.