[No. 24732.   Department One.   January 25, 1934.]

THE STATE OF WASHINGTON, *on the Relation of August Knez, Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

*A. C. Van Soelen, J. Ambler Newton,* and *Glen E. Wilson,* for appellants.

*Colvin & Rhodes,* for respondent.

MITCHELL, J.—Plaintiff sued the city of Seattle and the city comptroller and ex-officio city clerk, setting up two causes of action:   (1) To compel the issuance to him of salary warrants for the balance alleged to

[1]Reported in 28 P. (2d) 1020; 33 P. (2d) 905.

be due him as a fireman; and (2) to compel the issuance of warrants for the balance alleged to be due R. B. Wells as a fireman, the claim for the latter having been assigned to the plaintiff.

Plaintiff's first cause of action was abandoned and dismissed. In the second cause of action, findings, conclusions and judgment were entered for the plaintiff. The defendants have appealed.

Wells has held the office of fireman in the Seattle fire department since March, 1923. His salary for 1924, as fixed by ordinance No. 46089, was one hundred forty-five dollars per month. In 1924, what is spoken of in these proceedings as an initiative measure or petition, having received the required number of signatures under the city charter, was presented to the city for referendum by the city council to the voters of the city. The council, by ordinance No. 47660, referred the initiative measure to the voters, who adopted it at a special election in November, 1924, the measure to go into effect January 1, 1925. The measure thus adopted by direct legislation was as follows:

"AN ORDINANCE relating to, and increasing, the salary rates of certain civil service employes of the Police and Fire Departments of the City of Seattle.

"Be it Ordained by the City of Seattle as follows:

"Section 1. That the salary rates in effect July 1, 1924, of each and every civil service employe in Class 'C' of the Police Department, and of each and every civil service employe in Class 'D' of the Fire Department, of the City of Seattle, be, and the same are hereby, increased in the sum of Twenty-five ($25.00) Dollars per month; Provided, however, that such increase of rates shall not become effective until the first day of January, 1925.

"Section 2. The Legislative Department of the City of Seattle shall, from time to time, pass the necessary salary ordinances to make such increase effective."

Wells' salary, therefore, for 1925 was twenty-five dollars per month more than in 1924, or one hundred seventy dollars per month, which continued until 1927, at which time his salary was advanced to one hundred eighty dollars per month, and continued in that amount until 1932. There appears to be a discrepancy between his monthly salary of one hundred seventy dollars, made up of the original one hundred forty-five dollars and the additional twenty-five dollars provided by the initiative measure, as compared with the one hundred eighty dollars received by him from January 1, 1927, until July 1, 1932. This is succinctly accounted for and explained by the appellants in their brief as follows:

"The reason for the range of salary was the policy of allowing an increase for each year of service, so-called automatic, up to the maximum amount. This policy was not adopted by the initiative ordinance but by the City Council in the salary ordinance of each year."

This explanation also gives meaning to section 2 of the initiative measure with respect to future salary ordinances to take care of the yearly so-called automatic increase, but not to disturb the monthly salaries fixed by adding twenty-five dollars, ordered by the direct legislation, to the already existing amounts.

On July 5, 1932, at the alleged undue insistence of his superiors, Wells signed and delivered to the city a written instrument, as follows:

"I, the undersigned, a member of the Seattle Fire Department, do hereby agree to accept a reduction in my salary beginning July 1st, 1932, in accordance with the schedule published in the Seattle Fire Department Bulletin, Number 2, issued June 30th, 1932, until revoked by me in writing."

Later, September 17, 1932, under similar circumstances, Wells signed and delivered to the city a written instrument, as follows:

"I, the undersigned, a member of the Seattle Fire Department, do hereby agree to accept a reduction in my salary beginning July 1st, 1932, in accordance with the reduced salary schedule provided in Ordinance No. 62878 until revoked by me in writing.

"I also hereby revoke the former waiver signed by me on or about July 1st, 1932."

Under these instruments signed by Wells and under the 1933 salary ordinance based on the waivers, Wells was paid only $153 per month from July 1, 1932, or $27 per month less than he was otherwise entitled to, for eight months covered by the complaint in this action.

The assignments of error are grouped under two heads, as follows: (1) That ordinance No. 63196 (1933 salary ordinance) is a valid exercise of legislative power; and (2) that the written waivers are valid and binding.

As to the first, which is levelled at only the continued effectiveness of the salary ordinance adopted by vote of the people, the argument is that, notwithstanding the popular vote or direct legislation of the city in November, 1924, fixing the salary of firemen, the city, through its representative form of legislation, had the right to reduce such salary, as it did by ordinance No. 63196, fixing salaries for 1933. It will be noticed that, by the initiative measure referred to and adopted by the voters, the salary of a fireman, such as Wells, was fixed at the definite amount of $145, plus $25, or $170 per month.

The particular question now being considered was passed on in *Stetson v. Seattle,* 74 Wash. 606, 134 Pac. 494, at which time the provisions of article 4 of the

Seattle city charter were the same as they are now.. In that case, discussing the power of the city, by ordinance enacted in its representative capacity, to alter, amend or repeal a referendum ordinance adopted by the people, it was said:

"We think the charter, taken as a whole, must be held to mean that a referendum ordinance cannot be altered, amended or repealed by any less authority than that which called it into being. We do not question the right of the council to pass any amendatory or repealing ordinance as the charter is now framed, but we believe that it should be referred to the people under the simple referendum."

As to the second division of the assignments, the judgment of the trial court was against the validity of the instruments or waivers signed by Wells. In our opinion, the judgment was correct, assuming that Wells was an officer and not a mere employee, for the reason that an offer or waiver of that kind by a public officer is contrary to public policy, and not enforcible.

In this state, it has frequently been decided that a fireman is a public officer. In *Benefiel v. Eagle Brass Foundry,* 154 Wash. 330, 282 Pac. 213, in discussing this subject, it was said:

"In maintaining a fire department, a city is exercising a governmental function, and a fireman, instead of being considered as an ordinary employee of the city, 'is in fact a public officer and engaged in a governmental duty.' *Johnson v. Pease,* 126 Wash. 163, 217 Pac. 1005."

In *Johnson v. Pease,* 126 Wash. 163, 217 Pac. 1005, upon citing, with approval, *Lynch v. North Yakima,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A. (N. S.) 261, and cases from other states, it was said:

"A city fireman, instead of being considered an employee of a city, is in fact a public officer and engaged in a governmental duty."

A public officer must serve the government under the terms and conditions prescribed by law. Any purported contract to the contrary, with reference to his salary, is contrary to public policy.

*Bell v. Mabton,* 165 Wash. 396, 5 P. (2d) 514, was a case wherein the salaries of town officers were fixed by ordinance, among others, water works commissioner at one hundred and twenty-five dollars per month and water meter reader at five dollars per month. Bell made a written application for appointment to fill the two offices, and offered to perform the duties of both for a monthly salary of one hundred dollars. He was appointed, qualified and acted in both offices for about seven years, during all of which time he drew one hundred dollars per month, upon monthly claims presented by him. After his discharge, he filed with the city a claim in a lump sum of $25 a month *additional salary* as water commissioner and $5 per month as meter reader during the term of his employment, the claim being based on the salary ordinance. Upon rejection of his claim, he sued the city, and was allowed to recover thirty dollars per month, as representing the difference between the salary received and that provided for by ordinance, for the last three years. In affirming the judgment, it was said:

"As we hold that respondent was filling offices created by city ordinances, and that ordinance number 168 established salaries appurtenant to these offices, it follows that, under the rule laid down in the case of *Rhodes v. City of Tacoma,* 97 Wash. 341, 166 Pac. 647, any agreement on the part of respondent to accept as compensation for his services a less sum than that provided by ordinance was void as against public policy, and that respondent may recover (for the period within the statute of limitations, as held by this court in the case of *State ex rel. McMillan v. Miller,* 108 Wash. 390, 184 Pac. 352) the difference between the salary which

he in fact received, and that fixed by law for the offices to which respondent had been appointed.''

In *Rhodes v. Tacoma*, 97 Wash. 341, 166 Pac. 647, Rhodes was an officer in the light department of the city at a salary fixed by ordinance in the sum of two hundred dollars per month. Upon his appointment and qualification, he was told, in substance, that his pay would be only one hundred and fifty dollars per month, that amount being mentioned because of the then financial condition of the light department. As his salary warrants in the sum of one hundred and fifty dollars were delivered, he endorsed and cashed them. His endorsement on each was made in connection with a printed endorsement on the check, as follows:

''Acknowledgment of payment in full for services rendered to the city of Tacoma etc.''

He sued the city to recover the balance of fifty dollars per month salary. The decision on appeal was in his favor, the court saying:

''It is well settled law that an officer's right to his salary which is fixed by law or in a manner prescribed by law does not rest upon any contractual relation existing between him and the municipality or the state under which he holds the office. *Bartholomew v. Springdale*, 91 Wash. 408, 156 Pac. 1090. It seems equally well settled that any contract or agreement on the part of an incumbent of an office, made at the time of or before his appointment to the office, that he shall accept in lieu of the salary prescribed by law a sum less than is so prescribed is void as against public policy and does not become binding upon him so as to preclude him from recovering the full amount of the salary. *Miller v. United States*, 103 Fed. 413; *Glavey v. United States*, 182 U. S. 595; *Lukens v. Nye*, 156 Cal. 498, 105 Pac. 593, 36 L. R. A. (N. S.) 244, and note. So, even should it be considered that there was a contract or understanding between appellant and certain officers of the city, other than with the city

council evidenced by ordinance, appellant would not be estopped from claiming the full amount of the salary prescribed by this ordinance.

"Is appellant precluded from now asserting his claim for the unpaid portion of his salary because of his indorsements upon the salary warrants under the above quoted language found on the back thereof, which counsel for the city contends amounts to a full accord and satisfaction on the part of appellant. Now since we have seen that appellant's right to the salary of the office he occupied does not rest upon any contractual relation existing between him and the city, and the salary of his office is fixed and certain in amount, there being no dispute as to the time he was an incumbent of the office, it would seem that any such alleged accord and satisfaction would be without consideration. True the city paid him $150 monthly, but its obligation so to do was absolute. It thereby paid him no more than it was at all events bound in law to pay him. So it is easy to see that it gave him nothing in consideration of any accord and satisfaction."

Appellants speak in their brief of the budget law, Rem. Rev. Stat., § 9000-13 *et seq.,* which, it is argued, requires the city council "to provide for salaries by tax levy every year and make appropriations therefor." True, that law requires, for consideration, the assembling of estimates, among others, covering "in detail the salaries of every officer and employee, etc." That, however, gives no authority to change or alter the *amount* of salary already provided by law for a given office.

Judgment affirmed.

BEALS, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.

## ON REHEARING.

[*En Banc.* June 20, 1934.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein.