[No. 25676. Department One. September 4, 1935.]

THE STATE OF WASHINGTON, *on the Relation of Roy Pike et al., Respondents,* v. THE CITY OF BELLINGHAM *et al., Appellants.*[1]

[1]Reported in 48 P. (2d) 602.

*Hobart S. Dawson, Glenn R. Madison,* and *Abrams & McCush,* for appellants.

*Lester Whitmore* and *Colvin & Rhodes,* for respondents.

GERAGHTY, J.—This is an appeal by the city of Bellingham and certain of its officers from a judgment granting a writ of mandamus directing them to issue salary warrants to respondents, members of the police and fire departments of the city.

The city, by ordinance No. 4802, passed in December, 1927, established the salaries to be paid the members of the police and fire departments of the city, effective as of January 1, 1928. In December, 1928, the voters adopted initiative ordinance No. 4941, as follows:

"Section 1. That the salary rates in effect September 1, 1928 of each and every civil service employee in the police department and each and every civil service employee in the fire department, of the City of Bellingham, be and the same are hereby increased in the sum of Twenty-five Dollars ($25.00) per month; provided, however, that such increase of rates shall not become effective until the first day of January, 1930.

"Section 2. The city council of the City of Bellingham, shall from time to time, pass the necessary and/or ordinances to make such increase effective."

The monthly increase in salaries provided for in the initiative ordinance was paid by the city during the years 1930 and 1931, and provision was made in the annual budget for the year 1932 for like salaries.

In the early part of 1932, members of the police and fire departments, including respondents, signed written waivers or donation agreements of a part of their salaries for the year 1932. The agreements recited that, owing to the fact that some of the members of the departments would have to be released from service during the year unless the men themselves donated a portion of their salaries into the general fund of the city; and, desiring that no further reductions in the departments be made, the entire personnel of the departments was willing to donate

to the city total aggregate wages of approximately $4,558.32 for the police department, and $6,535.85 for the fire department. The instruments recited that the signers thereof

" . . . now sell, transfer, set over and assign unto the City of Bellingham all monies in excess of the salaries paid during the year 1926 to the various and respective offices now held, or to be held, by each and every of the undersigned during the current year, 1932."

The city comptroller was directed to pay all surplus above the 1926 rate of salaries into the general fund of the city during the year 1932 only. In March, 1932, and after the execution of this agreement by the men, the city passed ordinance No. 5298, fixing the salaries of the members of the two departments in conformity to the figures recited in the agreement.

In December, 1932, the voters of the city adopted an amendment to the city charter, by the terms of which the tax levy for city purposes was fixed at fifteen mills. It was provided in the amendment that this limit should include certain specific levies theretofore authorized to be made to assist in the payment of salaries of civil service employees in the police and fire departments. Salary ordinances were passed for the years 1933 and 1934, providing for the reduced salaries, the reductions being part of the back-pay sued for in this action.

In August, 1934, the city council adopted ordinance No. 5426 for reference to the voters. The ordinance provided for the repeal of initiative ordinance No. 4941 "from and after January 1, 1930," and recited that it was the voters' intention in the adoption of the charter amendment of December 3, 1932 (§ 346), to repeal initiative ordinance No. 4941, and that therefore "this ordinance shall be and is hereby made

retroactive to effectuate that purpose and intent.'' The ordinance was ratified by the voters December 1, 1934.

The trial court held that ordinance No. 5426 became effective upon the salaries of respondents January 1, 1935, and that they were entitled to the full salaries provided by initiative ordinance No. 4941 until that date, and by its mandate required the appellants to issue salary warrants to respondents for the difference between the salary schedule in that ordinance and the sums that had been paid them.

In argument, the appellants group their assignments of error under four heads. We shall consider these heads in their order.

Under the first head, it is contended that initiative ordinance No. 4941 never became a valid enactment of the city, for several reasons.

■ It is first argued that the ordinance is not complete in itself, but requires reference for its construction to the salary ordinance existing September 1, 1928.

Upon this point, the case of *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, would seem to be decisive. The initiative ordinance of the city of Seattle upon which Knez sued in that case was in this respect almost identical with ordinance No. 4941.

Ordinance No. 4941 is complete in itself, and while reference will have to be made to the pre-existing salary ordinance in order to determine the salary to be paid, this necessity does not make the ordinance obnoxious to article II, § 37, of the constitution or § 82 of the city charter, cited by appellants. As was said by Judge Rudkin in *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316, after the citation and discussion of authorities:

"It seems to us the foregoing authorities demonstrate that the act in question is not violative of the constitutional provision under consideration. Nearly every legislative act of a general nature changes or modifies some existing statute, either directly or by implication, and as said by the court in *Ex parte Pollard, supra* [40 Ala. 77], 'Whether an amendatory or an original act should be employed is a matter of legislative judgment and discretion which the courts cannot control.' The purpose of the constitutional provision was to protect the members of the legislature and the public against fraud and deception; not to trammel or hamper the legislature in the enactment of laws. If the act in question were entitled an act to amend the lien laws of the state, by proper reference, its validity could not be called in question, yet, what additional information would such a title or such an act bring home to either the legislature or the public. True, such an amendment would direct attention to the existing laws on the subject, but such was not the object or purpose of the framers of the constitution. So long as a legislative act is complete in itself, and has a sufficient title, its satisfies the requirements of the constitution, whether it contains much or little. The legislature may embody all legislation relating to a given subject in a single act, or it may cover the subject by a succession of acts. This is entirely a matter of legislative discretion over which we can assume no control."

█ The second objection urged against the ordinance under this head is that the fixing of salaries is an administrative function of the city council and not a matter for legislation within the purview of § 75 of the city charter reserving to the people the right to enact legislation. Section 75 reserves to the people themselves

". . . the power to propose any ordinance dealing with any matter within the realm of local affairs or municipal business and to enact or reject the same at the polls, independent of the mayor and city council."

Broader language than this could hardly be used. Rem. Rev. Stat., § 8949 [P. C. § 698], in relation to cities of the first class, provides:

"Any such city may provide in its charter for direct legislation by the people upon any matter within the scope of such powers, functions or duties of any such city by the initiative and referendum."

While we think the provisions of the charter are sufficiently broad to enable the voters of the city, through initiative, to deal with any matter within the realm of local affairs or municipal business, whether strictly legislative. or not, as that term is generally used, it is obvious that the fixing of salaries is always at some stage in the process a legislative function. Of course, the legislative authority could, unless restrained by constitutional or charter provision, make an appropriation in lump for specified governmental purposes, leaving it to administrative officers to fix the salaries. But the legislative authority is not required to do so and may itself establish the salaries to be paid. We know that this is almost universally so in practice, and that no other incident of municipal government engages more legislative attention.

The next objection to ordinance No. 4941 is that it is in conflict with Rem. Rev. Stat., § 9000-1 [P. C. § 890-1] *et seq.,* being the budget law for cities of less than three hundred thousand population. This objection is disposed of by *State ex rel. Knez v. Seattle, supra,* where the court said:

"Appellants speak in their brief of the budget law, Rem. Rev. Stat., § 9000-13 *et seq.,* which, it is argued, requires the city council 'to provide for salaries by tax levy every year and make appropriations therefor.' True, that law requires, for consideration, the assembling of estimates, among others, covering 'in detail the salaries of every officer and employee, etc.' That, however, gives no authority to change or alter the

*amount* of salary already provided by law for a given office.''

While the budget law referred to in that case applied to cities of three hundred thousand population and over and the one cited here relates to cities of lesser population, they are, in principle, the same. It is perfectly obvious that the budget law had to do with the orderly assembling of the various items of expense estimated for the ensuing budget year. In this process, provision is made for budget hearings at which objection may be made to proposed items of expenditure. These objections must of necessity relate to items that are not fixed by charter or law. It would not be contended the budget law operated upon the salaries of certain officials fixed in the charter. It cannot be argued with any greater degree of reason that the council, in the preparation of the budget, can nullify an initiative ordinance, and indirectly do what it has no authority to do directly.

■ Under the second head, it is argued, first, that, if ordinance No. 4941 was valid, it was not self-executing, but required legislation by the council to make it effective. Here, again, the budget law is invoked, the implication being that, if the council did not make the necessary budget provision and appropriation, the ordinance would be inoperative. But we think a sufficient answer to this contention is that, the ordinance being valid, it was the duty of the council to include the necessary funds in the budget. The council could not, by its inaction, defeat the right of the respondents to the measure of pay they were entitled to under the ordinance.

■ Nor do we think the respondents are estopped by not having challenged before the council at budget-making time the sum allocated for payment of their salaries. The respondents were entitled to their

salary warrants. How those warrants were to be met, was for the council to determine. The budget law, Rem. Rev. Stat., § 9000-4 [P. C. § 890-4], provides that

"The officials in charge of the several offices, departments, divisions, services and institutions shall be present at the time the estimates for their respective offices, departments, divisions, services, or institutions are under consideration and may be questioned by such council or mayor or by any taxpayers present concerning such estimates."

No provision is made for the appearance of the employees of the departments, as such, before the council.

Under the third head, appellants argue that ordinance No. 4941 was repealed by subsequent salary ordinances passed by the council; in other words, that, after its passage, the initiative ordinance was, like any other ordinance, subject to amendment or repeal by the city council.

We are unable to agree with this contention. The charter gives no such right. To concede the right of the council would nullify the provision for direct legislation. The state constitution provides that an initiative law may be repealed or amended after a period of two years from its passage. The charter of the city of Bellingham vests no such power in the council. The reasoning and citation of authorities in the *Knez* case are decisive of this point against appellants' contention.

"As to the first, which is levelled at only the continued effectiveness of the salary ordinance adopted by vote of the people, the argument is that, notwithstanding the popular vote or direct legislation of the city in November, 1924, fixing the salary of firemen, the city, through its representative form of legislation, had the right to reduce such salary, as it did by ordinance No.

63196, fixing salaries for 1933. It will be noticed that, by the initiative measure referred to and adopted by the voters, the salary of a fireman, such as Wells, was fixed at the definite amount of $145, plus $25, or $170 per month.

"The particular question now being considered was passed on in *Stetson v. Seattle*, 74 Wash. 606, 134 Pac. 494, at which time the provisions of article 4 of the Seattle city charter were the same as they are now. In that case, discussing the power of the city, by ordinance enacted in its representative capacity, to alter, amend or repeal a referendum ordinance adopted by the people, it was said:

" 'We think the charter, taken as a whole, must be held to mean that a referendum ordinance cannot be altered, amended or repealed by any less authority than that which called it into being. We do not question the right of the council to pass any amendatory or repealing ordinance as the charter is now framed, but we believe that it should be referred to the people under the simple referendum.' "

Section 75 of the charter reserves to the people of Bellingham the right to enact or reject any matter within the realm of local affairs "independent of the mayor and city council." This provision would be ineffective and meaningless if, after the passage of an ordinance by the people, the council could amend or repeal it.

It is also contended that ordinance No. 4941 was repealed by the provisions of charter amendment 346, adopted December 3, 1932, as construed by ordinance No. 5426 heretofore referred to. This contention is based upon the millage limitation and the specific provision in the charter amendment that the maximum tax limit of fifteen mills fixed in the charter is to include specific levies for the police and fire departments theretofore included in the charter.

But these specific levies were optional with the city council, and not mandatory. They were to be resorted

to only if necessary. It is not to be assumed that it was the intention that, after the adoption of the amended § 346, the city was thereafter to have no police or fire department. It is to be assumed that these departments were to be maintained within the limits of the millage fixed in the charter. If it was intended to reduce the salaries fixed by ordinance No. 4941, this purpose could have been accomplished by the submission to the people of a specific repealing ordinance at the time of the submission of the charter amendment.

Neither do we think the implied repeal of ordinance No. 4941 by amended § 346 of the charter is aided by the retroactive recital in referred ordinance No. 5626. While § 1 of this ordinance specifically repeals initiative ordinance No. 4941, § 2 goes on to declare that the repeal was intended in the adoption of the amended § 346, and that, therefore, this ordinance "shall be and is made retroactive to effect that purpose and intent."

Apart from the broad objection that the retroactive provision of the ordinance could not affect vested rights (*Graves v. Dunlap*, 87 Wash. 648, 152 Pac. 532, Ann. Cas. 1917B, 944, L. R. A. 1916C, 338), the ordinance violates the specific provisions of § 75 of the charter, which provides that ordinances submitted to the referendum shall be in full force and effect from and after proclamation by the mayor, to be made and published in the official newspaper within five days after the election. No specific authority is found in § 75 for giving retroactive effect to referred ordinances.

Possibly, it was this difficulty that suggested the peculiar form of § 2 of the ordinance. In form, it attempts a legal construction of a charter amend-

ment theretofore adopted. It was not for the city council in passing this ordinance, or for the people in subsequently approving it, to construe a charter amendment.

"In the first place the legislature of 1907 had no power to construe the act of its predecessor insofar as it related to past transactions, . . ." *Great Northern R. Co. v. Snohomish County*, 48 Wash. 478, 93 Pac. 924.

While the referred ordinance 5626 effectively repealed initiative ordinance No. 4941 as of the date of its proclamation by the mayor in December, 1934, it could not affect the salaries of the respondents until January 1, 1935, under the provisions of § 32 of the city charter, which reads:

"The salary of any officer shall not be increased or diminished after his election or appointment, or during his term of office. For the purpose of construing this section, each year's service of any officer or appointee, subject to civil service rules, when computed from the first day of the year, shall be considered a term."

The final issue raised by appellant's assignments is the effect of the donation agreement signed by the respondents. This instrument was effective only for the year 1932. The appellants argue that it is distinguishable from the waivers involved in *State ex rel. Knez v. Seattle, supra*. We think the distinction is one of words and form only, and not of substance. Whether the instrument, as in the *Knez* case, was in terms a waiver or, as in this case, a donation, the result is the same. By the terms of the instruments in both cases, the city treasury was relieved of the burden of paying the full salary provided by the ordinance. What is said in the *Knez* case, with the quotations there given from earlier cases in this court, is equally applicable here.

*Bell v. Mabton*, 165 Wash. 396, 5 P. (2d) 514, quoted from, was a case where Bell, water commissioner at a salary of $125 per month, offered in writing to perform the service of that office, as well as fill the position of water meter reader for which a salary of five dollars per month was provided, for the sum of one hundred dollars. He was appointed, qualified and acted in both positions for seven years, during all of which time he drew one hundred dollars per month upon monthly claims presented by him. Upon his discharge after this long period of service, he sued for the full salary, and his right to recover was sustained, the court using language quoted in the *Knez* case and unnecessary to be repeated here. Certainly, if years of acquiescence could not work an estoppel in that case, the mere use of a form of words cannot do so here. The considerations of public policy upon which the rule announced in the decisions are based apply in all cases, regardless of the form in which the waivers, donations or releases are couched.

We have given careful consideration to the record and the able briefs of the attorneys for appellants, but, as was said by the trial court in its memorandum opinion, we are unable to see any essential difference in principle between the facts in this case and the case of *State ex rel. Knez v. Seattle, supra.*

The judgment of the trial court will, therefore, be affirmed.

BEALS, BLAKE, and MAIN, JJ., concur.

TOLMAN, J., dissents.