[No. 27130. *En Banc.* March 8, 1939.]

CHESTER CHATFIELD *et al., Respondents,* v. THE CITY OF SEATTLE *et al., Appellants.*

A. E. AIRTH *et al., Respondents,* v. THE CITY OF SEATTLE *et al., Appellants.*

HUGH ADAMS *et al., Respondents,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

[1]Reported in 88 P. (2d) 582.

*A. C. Van Soelen* and *Glen E. Wilson,* for appellants.

*Colvin & Rhodes (Ralph E. Franklin,* of counsel), for respondents.

BEALS, J.—Three groups of employees of the city of Seattle, who had worked under the direction of the Seattle park board, during the month of May, 1937, sued the city of Seattle and its comptroller, seeking judgment for varying amounts, which the members of the groups, respectively, claimed were due them from the city.

The first action was brought by Chester Chatfield and others, who alleged, in separate causes of action, their employment by the city of Seattle; their civil service status; that the city of Seattle, through its city council, by ordinance enacted November 16, 1931, established their positions, grades, and compensation, as

employees of the park department; that, thereafter, between June 16 and August 5, 1932, the officers of the city illegally deducted from their salaries certain amounts of money; and that plaintiffs, respectively, were forced to accept salaries less in amount than they were legally entitled to receive. Plaintiffs prayed for judgment for the amounts which they alleged had been illegally deducted from their pay. The plaintiffs contend that the statute of limitations was tolled because of duress exercised over them by certain officers and agents of defendant city.

The second action was commenced by A. E. Airth and others, who alleged their employment by defendant city in connection with the operations of the park department; the fixing of their compensation by ordinance, effective January 1, 1932; that unlawful deductions from their pay were made between the dates referred to in the Chatfield complaint; that, by ordinance, effective January 1, 1934, their compensation was again fixed by the city council; that, in addition to the other deductions mentioned, between September 1, 1934, and June 30, 1935, further deductions from their pay were made; and that they were unlawfully laid off during the year 1935. They prayed for judgment for the respective amounts which they alleged were due them. Plaintiffs seek to avoid the operation of the statute of limitations by the same allegations of duress contained in the complaint of the first group.

The third action was commenced by Hugh Adams and others, who made practically the same allegations as were contained in the complaint of the group last above mentioned, save that no illegal lay-offs were charged.

By its answers, the city admitted the enactment of the ordinances referred to, but denied liability to the plaintiffs, or any of them. The city pleaded affirm-

atively that, under its charter, the board of park commissioners was vested with exclusive authority to employ and to fix the pay of the employees of the park department, and that plaintiffs had received all sums due them, pursuant to lawful action by that board. The city also pleaded that the respective actions had not been commenced within the time limited by law. The affirmative allegations in the answers were denied by appropriate replies.

The three suits were consolidated and tried to the court, sitting without a jury, and resulted in findings of fact and conclusions of law in favor of the respective plaintiffs, followed by judgments against the city, from which the defendants have appealed.

In this opinion, the city will be referred to as though it were the sole party appellant.

Error is assigned upon the court's holding that the board of park commissioners did not, under the city charter, enjoy exclusive authority to fix the pay and hours of work of employees working under its direction; upon the ruling of the court to the effect that Mr. Airth and his co-plaintiffs in the second action above referred to were wrongfully laid off during the year 1935, and that these plaintiffs were not barred by laches from recovering judgment against the city; upon the ruling of the trial court to the effect that respondents were under such duress as tolled the statute of limitations; and upon the refusal of the trial court to hold that respondents could not recover upon any claim which accrued more than three years prior to the institution of the actions. Appellant also assigns error upon the entry of judgment in favor of respondents.

These errors may be discussed under three headings: First, did the board of park commissioners have authority to fix the salaries of men working in that depart-

ment, the hours of labor of such employees, and their number? Second, were respondents under such duress as tolled the statute of limitations? Third, were any of respondents wrongfully laid off during the year 1935?

We shall first consider appellant's contention that the board of park commissioners has authority to fix salaries and hours of labor of city employees working under its jurisdiction.

Appellant relies upon the following sections of Art. XIII of the charter, the relevant portions of which read as follows:

"Sec. 3. The management and control of all the public squares and parks of the city and of all park drives, parkways, boulevards, play or recreation grounds of the city, are hereby vested in the board of park commissioners . . ."

"Sec. 7. The board of park commissioners shall, subject to civil service regulations, have exclusive power to employ and pay all such superintendents, employes and other persons as it may deem necessary for maintaining, improving and controlling all park property, and it shall, on or before the tenth day of August of each year, prepare and submit to the city council for approval and adoption, an estimate of the amount of money which may be required for the improvement and maintenance of parks, parkways, public squares, boulevards and play or recreation grounds for the succeeding year."

"Sec. 8. The board of park commissioners shall alone have authority to expend the park fund . . ."

The following sections of the city charter must also be considered:

Article IV, § 1: "The legislative powers of the city of Seattle shall be vested in a mayor and city council . . ."

Article IV, § 19: "GENERAL LEGISLATIVE POWER OF COUNCIL: The city council shall, in addition to the

powers enumerated in the last foregoing section, have all other powers usually exercised by the legislative bodies of municipal corporations of like character and degree with the city of Seattle, and all powers which now are or may hereafter be conferred upon incorporated towns and cities by the laws of this state."

Article XIII, § 1: "There shall be a park fund which shall consist exclusively of:

[The first three sections not pertinent to this inquiry.]

"4. Such annual tax levy as the city council may provide."

Article XVII, § 2: "No officer or employe of the city shall receive any compensation for his service as such officer or employe except by salary, which, when not prescribed by this charter, shall be fixed by the city council by ordinance. All salaries shall be paid at such times and in such manner as may be prescribed by ordinance. The salary of an appointive or elective officer shall not be increased after his appointment or election, or during the term for which he shall have been appointed or elected."

By Laws of 1925, Ex. Ses., chapter 125, p. 204 (Rem. Rev. Stat., § 9000-13 [P. C. § 687e-1], *et seq.*), the legislature established a budget system for cities of the first class, § 2 of the act, p. 204 (Rem. Rev. Stat., § 9000-14 [P. C. § 687e-2]) reading in part as follows:

"On or before the tenth day of July of each year the heads of all departments shall submit to the finance committee of the city council an estimate of the probable expense of their several departments for the ensuing year . . .

"Such estimates shall be designated, grouped and assembled under classifications to be prescribed by the state auditor of the state of Washington, and shall be segregated as follows:

"(a) Operating and Maintenance Expenses: This class of expenses shall cover in detail the salaries of every officer and employe . . ."

Section 5 of this act, p. 207 (Rem. Rev. Stat., § 9000-17 [P. C. § 687e-5]) reads:

"After the public hearings shall have been held, as provided in section 9000-16, the council shall by proper action determine the changes that have been made in the preliminary budget as published, and, on or before the first Monday in October adopt as the final budget for the succeeding year the preliminary budget as so amended, and each and every city official or employe shall be limited in the making of expenditures and the incurring of liabilities to the amounts of such detailed budget items, except as otherwise provided in 9000-19."

In support of its contention that the board of park commissioners is vested with authority to fix the pay and hours of labor of city employees working under the board's supervision, appellant cites the case of *Seattle ex rel. Dunbar v. Dutton,* 147 Wash. 224, 265 Pac. 729. In this action, the city sought personal judgments against the members of its board of park commissioners, who had paid $750 to the widow of one of its employees, who had been killed in the course of his employment. After her claim for damages had been rejected by the city council, the widow presented a similar claim to the board, which settled with her for the amount mentioned. A majority of this court were of the opinion that the city could not recover. The court noted that it was agreed that the members of the board acted in the utmost good faith, and while conceding that their action was somewhat irregular, held that there was no personal liability. The case cited had nothing to do with the power of the city council to fix salaries and hours of labor. It is not controlling here.

In the case of *State ex rel. Thompson v. Seattle,* 185 Wash. 105, 53 P. (2d) 320, it was held that the board had power to lay off a plumber, who had been temporarily employed to work on a particular project. It is stated in the opinion: "No court can compel the

park board to employ a plumber permanently if it does not need one." The case is not in point.

We are convinced that, under the statutes of this state and the provisions of the city charter, several of which are above referred to, authority to fix wages and hours of labor is vested in the mayor and city council as the supreme legislative authority of the city. The board of park commissioners prepares its budget and submits the same to the city council, as do other departments of the city government, and thereafter the council takes final and conclusive action thereon by ordinance, after making any changes therein which it desires to make. The city ordinances which are applicable here are in the record, and definitely fix the wages and hours of labor of city employees. As to these matters, the action of the supreme legislative authority is final.

It is against public policy for an employee of a municipal corporation to agree to waive any part of his salary, as lawfully fixed. *Rhodes v. Tacoma,* 97 Wash. 341, 166 Pac. 647; *Bell v. Mabton,* 165 Wash. 396, 5 P. (2d) 514; *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905; *State ex rel. Pike v. Bellingham,* 183 Wash. 439, 48 P. (2d) 602; *Rudnick v. Pierce County,* 185 Wash. 289, 54 P. (2d) 409; *State ex rel. Bradford v. King County,* 197 Wash. 393, 85 P. (2d) 670.

The action of the board of park commissioners, in paying respondents less than the amounts fixed by the city ordinances as salaries and wages pertaining to the respective positions occupied by respondents, was void, as beyond the power of the board.

On the other phase of this branch of the case, while the board was not compelled to maintain on its payrolls more persons than were needed to perform the work necessary to be done, the board had no authority

to refuse to follow the ordinances, in so far as the same provided the number of hours which should constitute a day's work, or the number of days which should constitute a week. In so far as they attempted to do this, they were acting without authority of law. If the board, in its judgment, was of the opinion that the work of its department required a number of employees less than that permitted by the city council in its ordinances, or if the board lacked money to pay its employees, it had the right to continue in its employ only as many persons as it believed necessary to accomplish the work required, or as it could pay; but it had no right to reduce wages, or hours of labor, the schedule of which had been established by the city council by ordinance. Such matters lie within the authority of the city council and the mayor, as the municipal legislative authority.

The trial court held that the three year statute of limitations [Rem. Rev. Stat., § 159 (P. C. § 8166)] applied to respondents' claims, but that the statute had been tolled because of duress exercised over respondents by certain officers and agents of the city. Respondents argue that the six year statute applies, and cite authorities in support of their contention. On this phase of the litigation, the cases of *State ex rel. McMillan v. Miller,* 108 Wash. 390, 184 Pac. 352, and *State ex rel. Bradford v. King County,* 197 Wash. 393, 85 P. (2d) 670, are controlling. The three year statute of limitations applies, unless for some reason its operation was tolled. This question affects only claims which arose during the year 1932. Other demands are apparently based upon rights which accrued after May 25, 1934, and during the year 1935, and are not barred by the statute.

The trial court found that respondents were forced to accept illegal deductions in pay during the

year 1932, as the result of duress, coercion, intimidation, and threats on the part of officials of the city of Seattle, and that this duress continued until the first Monday in June, 1934. The court set forth in some detail the nature of the coercion which it found had existed. The exercise of duress or coercion in an attempt to force a person to waive a lawful right is a wrong. It partakes of the nature of fraud (37 C. J. 949-50, § 321; 9 R. C. L. 711, § 2), and when relied upon, should be proved by clear and satisfactory evidence.

Respondents were protected in their positions by the civil service provisions of the city charter, which are found in Art. XVI thereof. This article (§ 12) provides, *inter alia,* that a city employee, having a civil service rating, may be removed by the appointing power only upon the filing with the civil service commission of a written statement showing the reasons for such removal; and that any employee so removed may, within ten days, demand an investigation. The civil service commission shall then forthwith investigate the matter, and if it finds that the removal is not warranted, the employee shall at once be reinstated. That a city employee might, in a lawful manner, attempt to enforce a claim for a higher rate of pay than that which he was receiving, basing his claim upon statute or city ordinance, would certainly constitute no legal ground for the separation of that employee from the service. He would have an absolute right to present his claim seasonably and in a proper way.

Assuming that it is possible that some form of duress might be exercised by officers of a city, which would excuse an employee of the city from pressing such a just claim as is now before us, within the time limited by law, the evidence in the record does not go that far. We have carefully read the evidence which re-

spondents contend shows that duress was exercised over them, and we are convinced that this evidence is wholly insufficient to support the finding of the trial court that duress, sufficient to toll the statute of limitations, was exerted over respondents. They were protected in their positions by the law and by civil service rules, which have been repeatedly enforced by this court.

To constitute duress, the threatened action must be unlawful. The suggestion that the municipal authority, which, under the law, has the right to fix salaries, may reduce them, is not duress, unless the suggested action will be arbitrary or capricious. Likewise, the intimation that the municipal authority which may reduce the number of employees may take that action, is not duress. Such authority may, and indeed should, reduce its force, if there be not available sufficient money to pay a larger group, or if the work to be done can be adequately performed by a less number of employees. No group of persons enjoying municipal employment has any vested right in the maintenance of any particular number of persons on the payroll. On the other hand, salaries and hours of labor, once fixed by ordinance, may be changed only by the lawful municipal authority, and employees may be discharged only when the necessity for their employment ceases, or for cause, according to law, charter, or ordinance.

Taking respondents' evidence at its face value, it is vague and indefinite, and when considered in connection with respondents' rights as employees of appellant city under the civil service provisions of its charter, it must be held that the evidence preponderates against the trial court's finding that such duress was exercised over respondents as would toll the statute of limitations.

The trial court erred in allowing recovery against appellant on any claim which accrued more than three years prior to the institution of the action thereon.

We shall now discuss the claims of A. E. Airth and his co-plaintiffs, as presented in the second action hereinabove referred to (superior court No. 299460). This group of respondents, in addition to claims for unlawful deductions in pay, were laid off between May 31 and December 31, 1935, and claimed that they were entitled to receive their pay for the period they had not been working, because of unlawful acts on the part of the board of park commissioners and the civil service commission in temporarily separating them from the payroll.

As hereinbefore set forth, the respondents in this action are entitled to recover for certain unlawful pay reductions, but we are convinced that the trial court erred in allowing several of them to recover their pay for the periods they were not working.

Respondents in this action were all civil service employees, and entitled to the protection of the provisions of the civil service rules. It appears that, subsequent to May 31, 1935, the board of park commissioners believed it necessary again to reduce expenses. May 29, 1935, the park board advised the civil service commission that it desired to lay off, in disregard of seniority, certain laborers who were considered the least efficient, and who were named in the letter to the commission. All the respondents in the action now under consideration were named in that letter, except Messrs. Airth and McConaghy. Had the board laid off the junior laborers, the board would have been entirely within its rights, but because it desired to lay men off out of order, the civil service commission held a hearing, and notified the men. After a hearing, the matter was taken under advisement, and June 12th following,

the commission granted leave to lay off the men named, with the exception of two—A. O. Ricketts and S. W. Murdock, respondents herein, who were reinstated. The commission directed that the department lay off, in regular order, other men in place of those two. It should be noted that one other man was reinstated, who is not a party to any of these actions.

The court properly allowed respondents Ricketts and Murdock recovery for their wrongful lay-off. The evidence as to what happened before the commission is quite limited, but we are of the opinion that it clearly appears that the civil service commission approved the lay-off of respondents out of order of seniority (with the exceptions above noted), and that these men are not entitled to judgment against the city on account of the lay-off. They contend that they were not given full opportunity to call witnesses, and that charges of inefficiency were not well founded. In this connection, it must be remembered that the board had the right to reduce its force, and it was contended, not that respondents were inefficient, but that they were the less efficient of its employees. They may have been good workmen, but the record simply indicates that the board had more efficient men on its payrolls. The judgment of the board on this matter, supported by the civil service commission, should not be lightly overruled by the courts. Municipalities must maintain the highest degree of efficiency possible, and the civil service commission in this instance supported the board's conclusions.

Article XVI of the city charter refers to the civil service department, § 4 thereof reading as follows:

"The commission shall make rules to carry out the purposes of this article, and for examinations, appointments, promotions and removals in accordance with its provisions, and the commission may, from time to time, make changes in the existing rules."

Section 5, of rule 10, as promulgated by the civil service commission, effective May 9, 1933, reads as follows:

"In reduction of force in a given position in a department, those who have no civil service standing shall be first laid off; then probationary employees; then civil service employees with least experience under their last examination, dating from appointments for the same position in that department. In computing service full consideration shall be given for actual service when the employee is serving in a higher grade or position in the same department, whether in or out of the classified service, and also for time spent on leave of absence regularly granted on account of sickness, or disability incurred in the course of employment. *Provided, however, the civil service commission may, in its discretion, in specific instances, grant permission to lay off, out of regular order, upon showing made by the head of a department of a necessity. Therefore, in the instance of efficient operation of the department, and after giving the employee affected an opportunity for a hearing.* In lay-off of laborers, from service outside the city, each location may be considered separately, with the consent of the commission, upon proper showing from the department involved."

(This rule was read into the record, and the foregoing has been copied from the statement of facts. It is evident that the rule was not accurately transcribed, but its meaning is obvious.)

The portion of the rule which we have emphasized clearly vests in the commission authority, in its discretion, to permit the lay-off of civil service employees, without regard to seniority.

In the case at bar, as above stated, the matter was presented to the civil service commission, and, with two exceptions, leave was granted to lay off the men whose names were suggested by the park board as proper subjects for temporary separation from the service. We are convinced that, on this phase of the

case, the charter provisions and the rules of the civil service commission were complied with.

The trial court found that the board of park commissioners took no definite, specific action laying respondents off, but we are convinced that the record shows the contrary. Respondents were not separated from the service, but merely laid off. They maintained their civil service rating, and were entitled to be called back in order of seniority.

As to respondent A. E. Airth, the record shows that he was not laid off in violation of the seniority rule, and that the work which he had been performing was absorbed by others. The board was under no obligation to continue to employ respondent Airth, if his services could be dispensed with. Respondent Airth called at the office of the civil service commission and asked for information as to why he had been laid off. He was told that he had been laid off in order of seniority, and it does not appear that he made any proper demand for a hearing before the commission. The court erred in allowing respondent Airth judgment on account of time lost.

Some contention is made that, during the period some of respondents were laid off, men not enjoying a civil service status were put to work by the board of park commissioners. It does not appear from the record that any complaint was made to the civil service commission concerning this matter. The record does not support a finding that non-civil service employees were substituted for those of respondents who had been laid off.

The judgments appealed from are reversed, with instructions to disallow recovery in favor of any respondent herein upon a claim which accrued more than three years prior to the institution of the actions, and the claims based upon alleged unlawful lay-offs, save the

claims of respondents Ricketts and Murdock. Judgment will be entered in favor of the respondents, respectively, for illegal deductions from their pay within three years prior to the institution of the actions, whether based upon purported reductions of salaries or wages, or reductions in periods of labor below the standards fixed by the city council of the city of Seattle.

BLAKE, C. J., GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

MILLARD, J. (dissenting)—The trial to the court of three causes of action (which have been consolidated) brought by a number of employees of the park department of the city of Seattle to require the city to pay to them certain amounts of their respective salaries, which they alleged were unlawfully withheld from them, and to recover for time lost by reason of lay-offs, resulted in findings and judgments in favor of the plaintiffs. The city and its comptroller appealed.

The facts are summarized as follows:

The city council of the city of Seattle duly passed ordinance No. 61,908, which fixed the salaries, wages, and hours of all of the city's employees, including employees of the park department, for the year 1932, and provided (§ 3 (a)):

"Every municipal employe, upon appointment from a Civil Service eligible list to any position, shall receive not to exceed the minimum rate of compensation fixed for said position, and shall continue to receive such minimum rate until changed by the City Council by ordinance. Non-Civil Service employees shall receive not to exceed the minimum rate of compensation."

The ordinance further provided (§ 6): "Eight hours shall constitute a day's work."

Under an economy program, the park board of the

city of Seattle, by formal resolution in June, 1932, reduced the salaries of employees of the park department. The first of the three causes of action involved in this appeal was commenced May 25, 1937, to recover the difference between the salaries fixed by the city ordinance and the reduced salaries under the resolution of the park board.

Ordinance No. 64,220, which fixed the salaries and established the working conditions of all of the employees of the city for the year 1934, was duly passed by the city council. That ordinance, like No. 61,908, provides that the city employees shall continue to receive the minimum rate of wages fixed by the ordinance until changed by ordinance, and also provides that eight hours shall constitute a day's work. By formal resolution in September, 1934, the park board provided that laborers in the park department shall work six hours, instead of eight hours, a day, and be paid accordingly. In December, 1934, the park board submitted to a vote of the employees of the park department the question whether they desired to continue the reduced time in 1935 or work full time and reduce the number of employees. A majority of the employees of the park department voted to continue the reduced time.

During 1935, the employees were permitted to work only four days a week, of eight hours, or thirty-two hours a week, and were paid accordingly. In 1935, some of the employees were laid off, out of order of seniority, on the ground of alleged inefficiency; that is, they were laid off and not given the benefit of their seniority rating under civil service rules. During the time these men were laid off from their work in 1935, men without civil service classification were employed in the park department.

Ordinance No. 65,082, duly passed by the city coun-

cil, fixed the salaries, wages, and hours of work of all employees of the city for the year 1935, and provided that five days (a forty-hour week) would constitute a week's work. The ordinance also provided that all employees "shall continue to receive" the rate of pay fixed until changed by ordinance. The actions to recover for 1934 involve the Airth case and the Adams case, but not the Chatfield case. The action to recover for the period of 1935 involves only the Airth case.

The trial court found that the amounts deducted from the salaries of the respondents were illegally deducted, that no one who had legal authority to do so ever laid off the respondents, and that the respondents were forced to accept the illegal deductions. The court further found that, by reason of the intimidation, duress, and coercion on the part of the officials of the city of Seattle and of the park board of the city of Seattle, which continued and was in full force and effect until the first Monday in June, 1934, at the time of the expiration of the term of the then mayor, respondents were forced to accept the illegal deductions in pay during the year 1932.

The recovery allowed for 1932, 1934, and 1935 was the difference between the legal salaries fixed by ordinance and the amount paid. The rate of pay which is made the basis of recovery was never changed by the city council.

Counsel for appellants first contend that, under the following sections of Art. XIII of the Seattle city charter, the board of park commissioners has exclusive authority to fix salaries, conditions of employment, and the number of employees in the park department; therefore respondents are not entitled to recovery on account of the reductions in salary, re-

duction in working time, and lay-offs which were effected pursuant to formal action of the park board:

"Sec. 3. The management and control of all the public squares and parks of the city and of all park drives, parkways, boulevards, play or recreation grounds of the city are hereby vested in the board of park commissioners. . . ."

"Sec. 7. The board of park commissioners shall, subject to civil service regulations, have exclusive power to employ and pay all such superintendents, employes and other persons as it may deem necessary for maintaining, improving and controlling all park property, and it shall, on or before the tenth day of August of each year, prepare and submit to the city council for approval and adoption, an estimate of the amount of money which may be required for the improvement and maintenance of parks, parkways, public squares, boulevards and play or recreation grounds for the succeeding year.

"Sec. 8. The board of park commissioners shall alone have authority to expend the park fund, and the city clerk of the City of Seattle shall be clerk of the park board, and all expenditures on account of property or work designated in this article shall be made upon vouchers approved by the board of park commissioners through its president and secretary. Each voucher shall, when accompanied by a detailed statement of such expenditures, be certified to the city comptroller, who shall issue his warrants therefor to the city treasurer, and the same shall be paid by the treasurer out of any money in the park fund not otherwise appropriated."

The foregoing did not vest in the board of park commissioners the right to fix salaries. The city charter (Art. XVII, § 2) clearly, specifically vests only in the city council authority to fix the salary or compensation of all employees or officers of the city unless the compensation of such employees or officers is prescribed by the city charter. By the adoption of Art. XVII, § 2, of the city charter, reading as follows, the

people of the city of Seattle legislated upon a specific subject—what authority in the city should fix the compensation of all city officers and employees—and vested that authority in the city council:

"No officer or employe of the city shall receive any compensation for his service as such officer or employe except by salary, which, when not prescribed by this charter, shall be fixed by the city council by ordinance. All salaries shall be paid at such times and in such manner as may be prescribed by ordinance. The salary of an appointive or elective officer shall not be increased after his appointment or election, or during the term for which he shall have been appointed or elected."

The charter vests *solely* in the city council the power to fix salaries and working conditions of employees and officers of the city. The authority so vested in the city council is exclusive and must be observed. As the salaries of respondents were fixed by the city council and were never changed by the city council, respondents are entitled to recover the difference between the legal salaries fixed by city ordinance and the reduced salaries paid to them pursuant to resolution of the board of park commissioners, as such resolution was invalid.

We have consistently held that, where salaries or wages are fixed by the legislative or governing body of a municipal corporation, a regular employee can look to that salary as fixed by the legislative or governing body, and recover for any reduction not authorized or approved by the legislative body of the municipal corporation. See *Rhodes v. Tacoma*, 97 Wash. 341, 166 Pac. 647; *State ex rel. Knez v. Seattle*, 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905; *Rudnick v. Pierce County*, 185 Wash. 289, 54 P. (2d) 409; *State ex rel. Ross v. King County*, 191 Wash. 340, 71 P. (2d) 370.

The charter gives no right to the board of park commissioners to nullify the ordinances fixing the compensation and hours of service of the employees or officers of the city. Quite the contrary. ·Only in the city council is there authority to fix the compensation and working conditions of the employees and officers, and the salaries or wages once fixed by the city ordinance may not be changed other than by the city council.

Counsel for appellants next contend that respondents' claims for June, July, and August, 1932, are barred by the statute of limitations, which provides that an action of the character of those before us must be commenced within three years after the cause of action shall have accrued (Rem. Rev. Stat., § 159 [P. C. § 8166]), and these actions were not commenced until May 25, 1937, almost five years after the date of accrual of the cause of action.

As sustaining authority, *State ex rel. McMillan v. Miller,* 108 Wash. 390, 184 Pac. 352, is cited. In that case, we held that, upon the rendition of services by a county official for which the law fixed an unchanged compensation during the whole period, there arises an implied obligation of a contractual nature to pay such compensation, governed by the three-year statute of limitations, Rem. Rev. Stat., § 159, for actions on contracts, express or implied; and that, under the statute providing that the salary of such officers shall be paid monthly, a right of action therefor accrues each month, notwithstanding the salary is fixed by statute at a certain amount "per annum."

See, also, 37 C. J. 786, § 126, and the cases there cited, on the question whether an action to recover an official salary definitely fixed by ordinance or statute is regarded as an action on a liability in writing within the meaning of the statute of limitations.

The trial court held that the three-year statute of limitations applied but was tolled by duress; that respondents were forced to accept the illegal deductions in pay during the year 1932 as the result of duress, coercion, intimidation, and threats on the part of officials of the city of Seattle, which continued until June, 1934, when the term of office of the then mayor expired.

"That the city officials of the city of Seattle were determined to reduce the city expenses of the City of Seattle and the Park Department; that the officers of the City of Seattle and the officers and agents of the Park Department threatened the plaintiffs herein that if said plaintiffs did not submit to said deductions that said plaintiffs would be in danger of losing their positions and that their civil service rating would be affected and that by reason of said intimidations, threats and coercion actions were not brought to recover the amounts herein sued for until after the second Monday in June, 1934; . . ."

Appellants have not sustained the burden that is theirs of showing that the trial court's finding was contrary to a preponderance of the evidence. *Townsend v. Rosenbaum,* 187 Wash. 372, 60 P. (2d) 251.

The statement of facts is replete with testimony to the effect that, in 1932, a mayor was inducted into office with a program to reduce expenses of the city. In his endeavor to approximate that program, the compensation of employees was reduced below the scale established by city ordinance, and civil service employees were discharged and their places filled by employees who did not have civil service classification, and the victims of that program were warned that they would be required to submit to the treatment accorded or else they would be deprived of their positions. The acceptance of the reduced pay was not in law a voluntary one.

Respondents labored under the fear, which was well founded, that, if they brought action to recover the amounts illegally withheld from them, they would be discharged. Duress such as that tolls the statute of limitations until cessation of the duress or intimidation, which did not cease until the expiration in June, 1934, of the term of the mayor who was intimidating respondents and preventing them from commencing their actions. 37 C. J. 949. See, also, *Eureka Bank v. Bay*, 90 Kan. 506, 135 Pac. 584; *Allen v. LeFlore County*, 78 Miss. 671, 29 So. 161; *Aldrich v. Steen*, 71 Neb. 33, 98 N. W. 445, 100 N. W. 311; *Bither v. Packard*, 115 Me. 306, 98 Atl. 929; *Durazo v. Durazo*, 19 Ariz. 571, 193 Pac. 350.

While the pressure of the duress continued, the statute of limitations did not commence to run. The mayor's term expired June, 1934. The actions were commenced in May, 1937. The actions were brought within time.

A part of the recovery allowed to respondents in the Airth case was on account of alleged wrongful lay-offs, or separation from their employment, in 1935.

The trial court found that, in 1935, between May 31st and November 10th, that respondents were separated from their employment in disregard of their civil service rating and seniority rights; that respondents were separated from their employment "not" as a matter of discipline or a matter of suspension, and were laid off indefinitely and not for any specified time. The respondents were given a hearing before the civil service commission and objected to the separation and sent a communication to the board of park commissioners immediately following their separation from employment, objecting to that separation. They reported for duty and were ready, able, and anxious at all times to work during the period they were

separated from employment. By the provisions of the city charter, authority is vested in the board of park commissioners to separate from their employment employees in the park department, but no action was taken by the board of park commissioners ordering the employees to be separated from their employment in 1935, and contrary to the provisions of the city charter and rules of the civil service commission, the notice served upon the respondents advising them of their separation from employment did not state the reasons therefor; and that the separation from employment was illegal, as it was contrary to the provisions of the charter of the city of Seattle and the rules of the civil service commission.

Not only is there *a failure to show that the evidence preponderates against the foregoing findings,* but *the evidence overwhelmingly supports the findings.*

The city charter provides that an employee in the classified civil service may be removed by the appointing power (the board of park commissioners in the case before us) only upon filing with the commission of a statement in writing of the reasons therefor, and the employee so· removed may within ten days after the removal demand an investigation. On May 29, 1935, the chief clerk of the board of park commissioners made written request of the civil service commission for permission to lay-off, out of regular order, twelve laborers whom "we consider the least efficient in the department." In that letter, it is stated that the budget of the park board has been greatly reduced in the past three years, and it would be of great assistance to the department if it could keep the more efficient men.

The testimony does not establish the fact that that action was taken by order of the board of park commissioners; in fact, the testimony refutes any such

presumption. The one charged with the duty of keeping the minutes of the board of park commissioners brought the minutes of the park board into court for the period commencing May, 1935, up to and including October, 1935. He testified that, in the minutes between those dates, he could not find any reference to the separation from employment or the lay-offs of Airth and others. That is, the minutes of the board of park commissioners failed to disclose any action by the board, as a board, authorizing the lay-offs or suspension from employment of the respondents in the Airth case. There is testimony to the effect that the members of the park board did not know anything about the lay-off of one of the respondents, who, quite incensed, telephoned a number of the members of the park board concerning the matter. No action was taken by the board of park commissioners ordering the respondents to be separated from their employment in 1935.

There was, also, a violation of the charter's provisions and the rules of the civil service commission in that the notice served upon the respondents advising them of their separation from employment stated no reasons therefor. The suspension was illegal and of no effect whatsoever, as no one in authority ever removed or laid off the respondents. *Larson v. Civil Service Commission*, 175 Wash. 687, 28 P. (2d) 289.

Under the civil service rules, the respondents could not be laid off out of order without being given an opportunity for a hearing and also after a showing by the park board of the necessity therefor. The appointing power may remove, but it is required to file with the commission a statement in writing of the reasons for such removal. Respondents were notified of their lay-off out of order and also informed that they would be given a hearing. All of them, with the exception

of Airth, who went to the hearing and was sent away, attended the hearing and resisted this lay-off out of order. Airth was told he would not be given any hearing. The demand of the attorney of respondents for specification of the charges was refused. Airth's attorney was informed that it was not necessary that charges be filed, as the commissioners intended, in any event, to "lay off" respondents. The request of respondents in July for reinstatement was denied. When the civil service commission notified respondents of their separation from employment and of the date fixed for a hearing, respondents did all that was required of them when they, represented by counsel, attended that hearing and afterward through their counsel protested to the park board. There is no question of laches in these cases. The actions were brought within the period of the statute of limitations.

The author of this dissent wrote the foregoing when the causes were assigned to him for opinion following the hearing to Department One in the September term.

Re-examination of the record convinces him of the correctness of the statement that the evidence overwhelmingly supports the findings, one of which—"a question of fact to be determined from all of the surrounding circumstances and personal characteristics of the parties involved in each particular case" (*State ex rel. Bradford v. King County,* 197 Wash. 393, 85 P. (2d) 670)—was that the respondents were forced to accept the illegal deductions in pay as the result of duress, intimidation, and threats on the part of officials of the city of Seattle.

That being so, the rule that, where the party submits to an illegal exaction because of some necessity which amounts to compulsion, the victim may recover the amount paid as having been obtained by duress

or business compulsion, applies. *Ramp Buildings Corp. v. Northwest Building Co.,* 164 Wash. 603, 4 P. (2d) 507, 79 A. L. R. 651. See, also, dissenting opinion in *State ex rel. Bradford v. King County,* 197 Wash. 393, 85 P. (2d) 670, which, by reference, is made a part of this dissent.

The judgment should be affirmed.

MAIN and STEINERT, JJ., concur with MILLARD, J.

